[Crim. No. 17355. Second Dist., Div. Four. July 22, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
LARRY JAMES HUBBARD, Defendant and Appellant.

## COUNSEL

Richard S. Buckley, Public Defender, William V. Larsen, James L. McCormick, John D. McGuire and Harold E. Shabo, Deputy Public Defenders, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and William R. Pounders, Deputy Attorney General, for Plaintiff and Respondent.

## Opinion

**FILES, P. J.**—After a court trial defendant was convicted of possession of a dangerous drug, secobarbitual sodium, also known as seconal, in violation of Health and Safety Code section 11910. The court suspended proceedings and granted probation. Defendant is appealing from this order which is deemed, for the purpose of appeal, a judgment.

The issues on appeal relate exclusively to the manner in which the arresting officers found the contraband in defendant's possession. Prior to trial there was a motion under Penal Code section 1538.5 to suppress the evidence upon the ground it had been illegally seized. That motion was denied. The facts upon which defendant's contentions rest may be stated briefly.

At 9:30 p.m. on December 5, 1968, Police Officers Weber and Lurz, in uniform, on patrol in a marked vehicle, saw a vehicle driven by defendant fail to stop for a traffic light at the intersection of Adams and La Brea, in Los Angeles. The officers followed defendant, who immediately turned into a gas station and stopped. At that time the officers' intention was to do no more than issue a citation for a traffic violation. As the vehicles stopped, defendant and two passengers simultaneously stepped from defendant's vehicle. Defendant advanced towards the officers. Officer Weber asked them to step over to one side and Officer Lurz "patted down" each of them for weapons. In patting defendant, Officer Lurz thought he felt capsules in defendant's pants pocket and told Weber. Weber could see a plastic bag protruding from the pocket. Weber then asked defendant if he had any pills in his pocket. Defendant responded, " 'They're reds. They belong to my mother.' " Weber then asked defendant to take the pills out. Defendant thereupon handed Weber the clear plastic bag, which contained 17 red capsules having the familiar appearance of seconal. Subsequent chemical analysis confirmed the nature of the contents.

At the hearing on the motion to suppress the evidence defendant moved to strike the testimony of Officer Weber that defendant had said, " 'They're reds. They belong to my mother.' " The motion was made upon the ground that defendant had not been advised of his right to silence and to counsel in conformity with *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. The motion was at that time denied.

### I.

Defendant's first contention here is that the record fails to show any justification for patting his outer clothes. The legal standard is stated in *Terry* v. *Ohio* (1968) 392 U.S. 1, 27 [20 L.Ed.2d 889, 909, 88 S.Ct. 1868]: "Our evaluation of the proper balance that has to be struck in this type of case leads us to conclude that there must be a narrowly drawn

authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. [Citations.] And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience."

In describing the showing which must be made, the court said at page 21 [20 L.Ed.2d at p. 906]: "And in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. [Fn. omitted.]"

■ When counsel asked Officer Lurz why he felt it necessary to pat down defendant, he responded: "Pat down everyone, sir, that I talk to, for safety reasons, safety of myself and my partner."

That undiscriminating approach does not meet the Supreme Court's test. (See *People* v. *Adam* (1969) 1 Cal.App.3d 486, 489 [81 Cal.Rptr. 738].)

But Officer Weber, who directed the operation, was more articulate. When asked if he had a particular reason for making a patdown, he said: "Yes. Like I said, all three suspects alighted from the vehicle almost simultaneously . . . They all got out on us, and I felt, for the protection of my partner and myself, we better search them down . . . They just alighted and stood there, and defendant Hubbard started to walk back towards me, and the other two just more or less stood there on the other side of the car."

Added to this are the facts that the scene was out of doors, at night, and defendant's vehicle was being stopped only for a minor traffic violation, an occasion which did not require and normally would not result in the activity which the officer observed. Under the circumstances the occupants' sudden debouchment from the vehicle was interpreted as a threat to the safety of the officers. We cannot say that the trial judge, who saw the persons involved, was unreasonable in deciding that the officers, who faced the situation, acted reasonably in deciding to check for weapons first.

## II.

Deciding the legality of the patdown is only the first step in determining whether the officers could lawfully seize the bag of capsules which was in

defendant's pocket. The People do not contend that Officer Lurz had probable cause to arrest when, in touching the outside of defendant's clothing, he felt the capsules.[1] Rather the People argue (a) that defendant produced the bag of seconal voluntarily, and (b) under *Miranda* v. *Arizona, supra,* 384 U.S. 436, defendant's statement, " 'They're reds,' " should not have been stricken and, with that statement in the record, there was adequate ground to arrest him and search him.

The contention that defendant produced the bag voluntarily requires no discussion. Defendant removed the bag from his pocket under the compulsion of a direct command by a police officer who was holding him under arrest.

The People's alternative theory depends upon the applicability of the *Miranda* rule to the facts of this case. It hardly can be doubted that after defendant said, " 'They're reds,' " the officers had ground to arrest him for violation of section 11910, Health and Safety Code. ■ It was understood by all concerned that the word "reds," as used by defendant, meant capsules of seconal. The usage is so common an appellate court may take notice of it.

The admissibility of the capsules was determined in a special pretrial hearing conducted under Penal Code section 1538.5. In that hearing the defendant moved to strike the statement on the ground that he had not been advised of his *Miranda* rights. That motion was denied. At the trial, when the officer gave the same testimony, the same motion was made and granted. The record contains no explanation for the inconsistent rulings.

---

[1]Dictum in *People* v. *Mosher* (1969) 1 Cal.3d 379, 394 [82 Cal.Rptr. 379, 461 P.2d 659], tends to discourage any such contention. There the Supreme Court said: "Hence, *Terry* and *Sibron* indicate that if an officer does not have probable cause for arrest but entertains a prudent reason to fear for his safety, he may perform a superficial pat-down search for weapons, but he may not reach inside the clothing of the suspect unless he has reason to believe a weapon is concealed there. Unless the officer feels an object which a prudent man could believe was an object usable as an instrument of assault, the officer may not remove the object from the inside of the suspect's clothing, require the suspect to take the object out of his pocket, or demand that the suspect empty his pockets. If the officer obtains contraband from the suspect's clothing, the trial court, in order to justify the search and the introduction of the fruits of the search into evidence, must find that the object could have felt like an object usable as an instrument of assault. (See *Sibron* v. *New York, supra,* 392 U.S. 40, 64-66 [20 L.Ed.2d 917, 935-936, 88 S.Ct. 1889]; *People* v. *Britton, supra,* 264 Cal.App.2d 711, 717 [70 Cal.Rptr. 586].) A box of matches, a plastic pouch, a pack of cigarettes, a wrapped sandwich, a container of pills, a wallet, coins, folded papers, and many other small items usually carried in an individual's pockets do not ordinarily feel like weapons. A more intensive or broad search 'violates the guarantee of the Fourth Amendment, which protects the sanctity of the person against unreasonable intrusions on the part of all government agents.' (*Sibron* v. *New York, supra,* 392 U.S. 40, 65-66 [20 L.Ed.2d 917, 936, 88 S.Ct. 1889].)"

The defendant having had the opportunity in a special hearing to litigate the issue of the admissibility of the capsules, no further contest of that issue was necessary at the trial, *i.e.*, there was no objection to that evidence or motion to strike it at the trial. On this appeal from the judgment defendant is entitled to a review of the issue based upon the record made at the special hearing. (See Pen. Code, § 1538.5, subds. (h), (m).)

That record includes the officer's testimony that defendant said, " 'They're reds,' " and we must assume in favor of the judgment that the trial court found that testimony credible.

The crucial question here is whether defendant's statement was admissible and may stand as a part of the legal ground for arrest or whether, as defendant contends, the statement was inadmissible and should be disregarded.

The *Miranda* opinion contains this epitome of its holding: "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.[4]" (384 U.S. 436, 444 [16 L.Ed.2d 694, 706].)

It is conceded that defendant was given none of the "safeguard" warnings before Officer Weber elicited the incriminating answer, " 'They're reds.' " Admissibility depends on whether defendant, at that time, was a person "taken into custody or otherwise deprived of his freedom of action in any significant way."

In two subsequent decisions the Supreme Court has rejected attempts to place categorical limitations upon the meaning of "custody." In *Mathis* v. *United States* (1968) 391 U.S. 1 [20 L.Ed.2d 381, 88 S.Ct. 1503], where a federal revenue agent had questioned a prisoner serving a state sentence in a state institution, the court held the *Miranda* safeguards were required even though the questioning was entirely unrelated to the reason for which the prisoner was being held. And in *Orozco* v. *Texas* (1969) 394 U.S. 324 [22 L.Ed.2d 311, 89 S.Ct. 1095] the court held that the *Miranda* rules must not be limited to station-house interrogation, but must be applied for the benefit of a person who is being held under arrest in his own home.

The California Vehicle Code establishes a procedure whereby most

---

"[4]This is what we meant in *Escobedo* when we spoke of an investigation which had focused on an accused."

violators, when apprehended, are given a citation and then released on a written promise to appear in court. (Veh. Code, §§ 40500-40504.) The detention which results is ordinarily brief, and the conditions of restraint are minimal. ▆ Nevertheless the violator is, during the period immediately preceding his execution of the promise to appear, under arrest. (*People* v. *Weitzer* (1969) 269 Cal.App.2d 274, 294 [75 Cal.Rptr. 318]; *People* v. *Valdez* (1966) 239 Cal.App.2d 459, 462 [48 Cal.Rptr. 840].)[2] Some courts have been reluctant to use the term "arrest" to describe the status of the traffic violator on the public street waiting for the officer to write out the citation (see *People* v. *Nunn* (1968) 264 Cal.App.2d 919, 923, fn. 4 [70 Cal.Rptr. 869]; *People* v. *Wohlleben* (1968) 261 Cal.App.2d 461, 463 [67 Cal.Rptr. 826]; *People* v. *Nieto* (1966) 247 Cal.App.2d 364, 369 [55 Cal.Rptr. 546]). The Vehicle Code, however, refers to the person awaiting citation as "the arrested person."[3] Viewing the situation functionally, the violator is being detained against his will by a police officer, for the purpose of obtaining his appearance in connection with a forthcoming prosecution. The violator is not free to depart until he has satisfactorily identified himself and has signed the written promise to appear.

In *People* v. *Manis* (1969) 268 Cal.App.2d 653 [74 Cal.Rptr. 423] the court drew a distinction between a "significant" restraint, which triggers the *Miranda* warnings, and a "transitory" restraint, which does not. The *Manis* opinion points out that when the *Miranda* opinion speaks of a person deprived of his freedom "in any significant way," it necessarily implies that there are other restraints which are classified as not significant, and not calling for the *Miranda* warnings as a prelude to questioning.

Furthermore, as the *Manis* opinion takes note, the word "significant" did not appear in the text of this phrase in the original publication of the *Miranda* opinion, but was added in final editing by insertions in four places. This editorial change emphasizes the Supreme Court's intention to preserve a distinction.

Similarly, in *Lowe* v. *United States* (9th Cir. 1969) 407 F.2d 1391, a motorist who had been stopped for investigation gave answers which incriminated him as the driver of a stolen car. Judge Carter, speaking for the

---

[2]Disapproved on another point in *People* v. *Doherty* (1967) 67 Cal.2d 9, 15 [59 Cal.Rptr. 857, 429 P.2d 177].

[3]Vehicle Code section 40500: "Whenever a person is arrested . . . the arresting officer shall prepare in triplicate a written notice to appear in court. . . ."

Vehicle Code section 40504, subdivision (a): "The officer shall deliver one copy of the notice to appear to the arrested person and the arrested person in order to secure release must give his written promise to appear . . . Thereupon the arresting officer shall forthwith release the person arrested from custody."

Court of Appeals, pointed out the dissimilarity between simple roadside questioning of a motorist and the kind of police interrogation which was described in *Miranda,* and said at page 1394: "The questioning of a driver of a stopped car on an open highway by one policeman, without more, cannot be characterized as a 'police dominated' situation or as 'incommunicado' in nature.

"......................................

"The questions asked by Deputy Dunham at the shoulder of Route 66 in the presence of a passenger certainly did not create a 'compelling atmosphere'. When a law enforcement officer stops a car and asks the driver for identification, a vehicle registration slip, and upon receiving unsatisfactory answers further asks the driver's destination and business, no 'in-custody' interrogation, as discussed in *Miranda,* takes place."

Neither in the *Manis* case, nor in *Lowe,* was the motorist actually under arrest at the time he was questioned. Nor did the officer have any ground to arrest either until after the incriminating statements were made. Thus, although those decisions present analogies, they do not reach our problem of the traffic offender who is actually under a kind of arrest.

We also take note of *People* v. *Abbott* (1970) 3 Cal.App.3d 966, 969 [84 Cal.Rptr. 40], in which officers questioned a suspect in a public park. The appellate court held the suspect's replies inadmissible because suspicion had "focused" upon him. *Abbott* does not mention either *Miranda* or *Manis.* Nor does it consider the view that the *Miranda* decision abandoned "focus" as a test. (See 384 U.S. at p. 444, fn. 4 [16 L.Ed.2d at p. 706], quoted *supra,* and *Lowe* v. *United States, supra,* at p. 1396.)

We put aside, as readily distinguishable, cases in which an officer stops a driver for a traffic violation, then discovers legal cause to arrest for a more serious offense, and thereafter interrogates the driver. In such a situation, as soon as probable cause to arrest for the more serious offense appears, the subject is deemed under arrest for that offense also, and the *Miranda* safeguards are applicable for that reason. (See, e.g., *People* v. *Bright* (1970) 4 Cal.App.3d 926 [84 Cal.Rptr. 691].)

The nearest to a square holding we have found in the California decisions is *People* v. *Bolinski* (1968) 260 Cal.App.2d 705, 717 [67 Cal.Rptr. 347]. In that case the defendant was in the State of Illinois when an officer stopped him and placed him under what the officer called "technical arrest" for tampering with gas pumps and failing to give proper signals on entering a highway. The officer noted that the registration of the car was in another's name and asked about it. Defendant replied that the car belonged to his uncle. The officer took defendant to the courthouse, radioed for a stolen

vehicle check, and, upon receiving a "no stolen report," released defendant. The car actually had belonged to the victim of a murder, and defendant's false answer to the Illinois officer was held to be admissible in defendant's trial for the murder.

In two other cases, California courts have stated, purely as dicta, that *Miranda* does not apply to persons detained for traffic violations.[4]

Outside California there is other authority for the view that *Miranda* is inapplicable to a motorist who is detained solely because of a violation of the vehicle laws. In *United States* v. *Chadwick* (10th Cir. 1969) 415 F.2d 167, the defendant was stopped and arrested by a state officer for driving with expired license plates, an offense for which he was subsequently convicted in a state court. While at the roadside the officer asked why the registration had expired. Defendant's answer was subsequently used against him in a federal court to convict him of transporting a stolen car in interstate commerce. In affirming, the Court of Appeals said at page 173: "This statement, in response to entirely permissible on-the-scene questions, was clearly outside *Miranda*."

Similarly in *Allen* v. *United States* (1968) 390 F.2d 476 [129 App. D.C. 61][5] defendant was stopped for driving without headlights. The officer then saw an apparently injured man in the car and asked questions. Defendant's answers were used against him in a prosecution for assault and unauthorized use of a vehicle. The Court of Appeals held that the questions were not custodial interrogation within the meaning of *Miranda*.

In *State* v. *Bliss* (Del. 1968) 238 A.2d 848 the Supreme Court of Delaware held *Miranda* not applicable to a motorist arrested for driving under the influence of alcohol.

As some of the cited opinions point out, the *Miranda* decision is based upon the Supreme Court's recognition of the dangers inherent in "incom-

---

[4]In *People* v. *Nieto* (1966) 247 Cal.App.2d 364, 369 [55 Cal.Rptr. 546], holding admissible in a possession of weapons prosecution an answer made by the defendant to an officer who had stopped him for speeding and driving without rear lights, the court said: "The recent case of *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], does not change the admissibility of this evidence. In any event, *Miranda* is inapplicable here, since the trial occurred more than a year before the date of *Miranda*."

In *People* v. *Superior Court* (1969) 273 Cal.App.2d 459, 463 [78 Cal.Rptr. 153], where defendant had been found holding a marijuana cigarette when the officer approached to cite him for hitchhiking, the court said: "Even if the question posed by the officer was a custodial interrogation within the ruling of *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974] (and we believe it was not), no statements were uttered by the defendant which were used by the prosecution."

[5]Motion to modify opinion denied 404 F.2d 1335.

municado interrogation of individuals in a police-dominated atmosphere." (384 U.S. at p. 445 [16 L.Ed.2d at p. 707].) ▇ The case at bench arises in a setting not at all comparable to what is discussed in *Miranda*. Here we have two police officers, at night, confronting three strangers on the pavement adjacent to a gasoline service station. The simple question which Officer Weber asked defendant in the presence of his friends presented none of the "compelling atmosphere" with which the *Miranda* opinion is concerned. We conclude that this is no more than the "transitory" restraint which, under the reasoning of the *Manis* and *Lowe* cases, *supra,* requires no *Miranda* "safeguards." The trial court rightly overruled the objection to the evidence of defendant's statement, " 'They're reds.' " With that statement in evidence, the officer had reasonable cause to arrest defendant and seize the contraband.

The judgment (order granting probation) is affirmed.

Jefferson, J., and Dunn, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 24, 1970. Peters, J., was of the opinion that the petition should be granted.