[Crim. No. 840. Fifth Dist. Nov. 2, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
TONY GONZALES HERRERA, Defendant and Appellant.

630

**COUNSEL**

Chapman, Mattern, Mansfield & Mason and Jackson H. Mason for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Jack R. Winkler and O. Robert Simons, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**COAKLEY, J.**—On January 12, 1969, at approximately 8 a.m., appellant, alone in his car, was stopped by two immigration patrol inspectors of the United States Border Patrol. The officers were in uniform and driving a marked Border Patrol car. It was their official duty to seek out aliens unlawfully in the United States. To that end they were stopping cars at or near the checkpoint at which they stopped the appellant.

At the hearing on appellant's Penal Code section 1538.5 motion to suppress evidence of marijuana and restricted dangerous drugs seized from appellant's car, certain facts were stipulated to and the superior court took judicial notice of other facts over appellant's objections. No issue is made on this appeal with respect to the court's taking judicial notice of the facts not stipulated to. We summarize the facts stipulated to or of which judicial notice was taken: the case was tried on the transcript of the preliminary hearing; no warrant of arrest or search warrant existed; the checkpoint at which appellant was stopped is located on State Highway 99, Interstate 5, commonly known as the Ridge Route, at elevation 2,000; Highway 99 is the only main highway to the San Joaquin Valley; the economy of the valley is primarily agricultural and employs a large number of Mexican-Americans and Mexican-Nationalists, legally in the country as holders of

so-called "Green Cards"; and it is common knowledge many aliens enter the United States from Mexico via Highway 99 into the San Joaquin Valley.

It appears to have been accepted without dispute that the checkpoint at which the appellant was stopped is approximately 200 miles north of the boundary between California and Mexico, approximately 30 miles south of Bakersfield in Kern County, and substantially less than 100 miles due east of the Pacific Ocean.[1]

From the reporter's transcript of the preliminary hearing, the following facts appear:

The attention of the officers was attracted to appellant's car because the driver appeared to be an alien, of Mexican descent, and the car was "saggy enough in the rear so that there could have been somebody in the back seat or the trunk of the vehicle"; the officers' purpose in stopping appellant was to search the car to determine whether an alien was being smuggled into this country; the officers asked appellant where he was going to which he replied, "San Jose"; the officers satisfied themselves that the appellant was a citizen of the United States and not an alien; when the officers saw no one save appellant inside the car, they asked appellant to open the trunk; when appellant complied, the officers found no one in the trunk but did see "[a] large box containing a number of packages, wrapped, square packages"; that the top of the box was open and that a number of the packages were visible without disturbing the large box; all of the packages were square and wrapped in brown paper, "in a particular manner that you find marijuana packaged in"; Officer Gross testified that he had seen marijuana wrapped in that manner on two or three prior occasions, and he suspected that the packages, so wrapped, contained marijuana. He testified that on seeing the packages and suspecting they contained marijuana he asked the appellant what was in the box, and appellant replied, "Marijuana."[2] The officer then opened one of the packages, removed and smelled a pinch of the contents, and then arrested and searched appellant. Appellant was then given the customary warning as to his constitutional rights.

A Kern County sheriff's officer was called and took appellant into cus-

---

[1]Respondent's brief states that the latter distance is 50 miles. The record itself does not appear to fix the distance precisely, other than being less than 100 miles.

[2]Appellant did not testify at the preliminary examination. However, at the hearing on the motion to suppress he testified that he remained silent when asked what the package contained. Because of the rule that the court must view the evidence in a light most favorable to the respondent, and presume in support of the judgment the existence of every fact that the trier could reasonably adduce from the evidence, we conclude that the court accepted the officers' version and not the appellant's version of what was said, and by whom about the packages containing marijuana. (*People v. Sweeney*, 55 Cal.2d 27, 33 [9 Cal.Rptr. 793, 357 P.2d 1049].)

tody. Examination of the contents of the packages revealed very large quantities of marijuana, of secobarbital, and of amphetamine sulphate. A gun was found concealed beneath the floor mat under the front seat. The car was registered to appellant and his wife.

Officer Gross testified that he and his fellow officer had been on duty at the checkpoint since 4 a.m.; that they had stopped 10 or 12 cars and found aliens in four of the cars. No alien was found in the trunk of any car. Officer Gross had never found an alien in the trunk of any car but had found them hiding in the back seat many times.

Appellant was charged in count I with the possession of marijuana for sale (Health & Saf. Code, § 11530.5), and in count II with possession of restricted dangerous drugs for sale (Health & Saf. Code, § 11911), both being felonies, and in count III with carrying a concealed weapon without a license (Pen. Code, § 12025), a misdemeanor. Following a preliminary examination, appellant was held to answer. An information charging the above three crimes was then filed. Appellant was arraigned and pleaded not guilty. When his motion to suppress the evidence was denied, appellant changed his plea to guilty on counts II and II. Count III was dismissed. He was sentenced to prison, the terms to run consecutively. He appeals, raising the following issues:

(1) unlawful search and seizure, in violation of his Fourth Amendment rights; and

(2) violation of his Fifth Amendment rights in that he was not advised of his constitutional rights before being asked what the packages contained.

### LEGALITY OF THE SEARCH AND SEIZURE

■ Basically, appellant contends that:

As applied to the facts of this case the statute[3] and the federal regulation[4] adopted pursuant thereto, on which the Border Patrol officers relied in stop-

---

[3]Immigration and Nationality Act, 8 U.S.C. section 1357 provides: "(a) Any officer or employee of the [Immigration and Naturalization] Service authorized under regulations prescribed by the Attorney General shall have power without warrant—

"(1) to interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States;

" . . . . . . . . . . . . . .

"(3) within a reasonable distance from any external boundary of the United States, to . . . search for aliens any . . . conveyance, or vehicle . . . for the purpose of patrolling the border to prevent the illegal entry of aliens into the United States; . . ."

[4]8 C.F.R. 287.1(a) provides: "(a) The phrase 'within a reasonable distance from any external boundary of the United States,' as used in section 287 of the Immigration and Nationality Act means within a distance of not exceeding 100 air miles from any external boundary of the United States. . . ."

ping appellant and searching his car, are unconstitutional; and, assuming constitutionality of the statute and regulation, nevertheless, there was not probable cause to arrest the appellant.

The statute has been held constitutional (*Fernandez* v. *United States* (9th Cir. 1963) 321 F.2d 283).

The regulation permitting the Border Patrol officers to stop and search a vehicle within 100 air miles of any external boundary of the United States has been held to be reasonable (*Fernandez, supra*).

The authority to search the trunk of cars for aliens has been upheld numerous times. (*United States* v. *Miranda* (9th Cir. 1970) 426 F.2d 283; *Roa-Rodriguez* v. *United States* (10th Cir. 1969) 410 F.2d 1206; *Barba-Reyes* v. *United States* (9th Cir. 1967) 387 F.2d 91; *United States* v. *Winer,* 294 F.Supp. 731; *United States* v. *Hortze,* 179 F.Supp. 913; *Ramirez* v. *United States* (5th Cir. 1959) 263 F.2d 385; and *People* v. *Jennings,* 231 Cal.App.2d 744 [42 Cal.Rptr. 332].)

Appellant points out that in none of the cited cases was the distance from an external boundary of the United States to the place of the search, more than 75 miles. He also points out that in certain of the cases cited the fruits of the search, narcotics, were suppressed upon the appellant's motion. The reason the fruits of the search were suppressed in the cases referred to is that the search was of an area too small to hide an alien, e.g., under the front seat of the car; or the narcotic seized was not in plain view when the officers searched the trunk, hood, or back seat of the car. On the other hand, where the narcotic seized was in plain view, upon the officers' examining under the hood or the trunk, the search was held to be lawful and the narcotic seized was admitted in evidence against the appellant (*Fernandez, Miranda,* and *Ramirez, supra*).

While it is true that the decided cases have dealt with distances of 75 miles or less from a border, none suggest that the stopping and searching of a trunk of a car for aliens at a distance greater than 75 but less than the 100 air miles provided for in the regulation, is unconstitutional or unreasonable. It is not disputed that the search in this case was conducted within 100 air miles of the Pacific Ocean, and may have been within 50 miles thereof. Highway 99 is the main highway into the San Joaquin Valley, and one of the two main highways to northern California's three great agricultural areas, i.e., the San Joaquin Valley, the Salinas Valley, and the Sacramento Valley, where, historically, natives of Mexico have been, and now are, employed in very large numbers. It is logical and reasonable to establish a checkpoint and to search cars for aliens on Highway 99 at the location in-

volved herein. We see no reason to declare the 100-mile limitation, as applied to the facts of this case, either unconstitutional or unreasonable.

 Upon the trunk being opened, the officers were not required to blind themselves to what was in plain sight. Thus, in *People* v. *Jennings,* 231 Cal. App.2d 744 [42 Cal.Rptr. 332], a Border Patrol officer stopped and searched appellants' car in the belief that the appellants might be making an illegal entry into the United States. When the trunk of the car was opened, the officers saw "in plain sight" many new men's suits bearing price tags. When the appellants' explanation of the clothing was unsatisfactory, the officer detained the appellants and notified the San Diego sheriff's office. The appellants were then arrested, charged with burglary, and convicted. Replying to appellants' contention that the clothing was not admissible in evidence, the court said at page 747: "The officer was not required to blind himself to the plainly visible large quantity of men's clothing marked with price tags." (Citing United States and California Supreme Court cases.)

In *Fernandez, supra,* when the hood was opened, the Border Patrol officers saw five packages wrapped in brown paper. Based upon their experience, they suspected that it was marijuana and arrested the appellant. The search and seizure were upheld.

In *Miranda, supra,* when the hood was opened, the Border Patrol officers found bricks of marijuana in the fender wells. Its seizure was upheld.

*Cervantes* v. *United States* (9th Cir. 1959) 263 F.2d 800; *Plazola* v. *United States* (9th Cir. 1961) 291 F.2d 56; and *Haerr* v. *United States* (5th Cir. 1957) 240 F.2d 533, the remaining three cases cited by the appellant and which we have not discussed on the issue of search and seizure, are clearly distinguishable.

We hold that the search and seizure were lawful and that it was proper to admit the marijuana in evidence.

### THE MIRANDA ISSUE

 On looking into the trunk, Inspector Gross did not see a person, but he did see packages wrapped in brown paper, which, on the basis of his experience, he suspected contained marijuana. He asked the simple and very natural question, "What is it?" To this question, appellant replied, "Marijuana." Appellant had not been given the *Miranda* warning prior to that brief colloquy as to the contents of the large box. He contends, therefore, that the question and answer and the seizure of the marijuana which followed violated his Fifth Amendment rights as delineated in *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. Though temporarily detained by the officers, appellant was not

then in custody and was not an accused. Neither the setting, a heavily traveled public highway, nor Inspector Gross' brief question, "What is it," bear any resemblance to the intensive and extensive police station interrogations, following arrest and custody, upon which the *Miranda* decision was based. (See *People* v. *Hubbard,* 9 Cal.App.3d 827 [88 Cal.Rptr. 411].)

In *People* v. *Manis,* 268 Cal.App.2d 653 [74 Cal.Rptr. 423], the police officers observed appellant carrying what appeared to be a new portable typewriter case. The area was one in which many burglaries had recently been committed and typewriters stolen. Appellant was walking toward an area of several pawn shops, and from time to time he looked back at the officers who were following him. He reversed his direction as the officers drove past him. Thereupon, the officers stopped appellant, identified themselves, and asked the following questions and received the following answers:

Where was he going? "Santa Monica."

How would he get to his destination? "Walk."

What was in the case he was carrying? "Radios."

Did he have a receipt for the radios? "No, I stole them." (See *People* v. *Manis,* 268 Cal.App.2d 653, 658 [74 Cal.Rptr. 423].) He was arrested, advised of his constitutional rights, prosecuted and convicted. As in our case, Manis made two interrelated and alternative contentions which he claimed required a reversal of his conviction. They were:

I. There was insufficient cause to detain him on the street, and, therefore, all evidence resulting from that detention, i.e., the radios, the case, and his admission of theft, was illegally obtained, and, hence, inadmissible.

II. Assuming there was sufficient cause to detain him, nevertheless his admission of theft was improperly elicited during a custodial investigation because of the failure to give the warning required in *Miranda.*

Following a comprehensive review of the latest decisions of the United States and the California Supreme Courts on the subject, the court in *Manis* concluded at page 669: ". . . that persons temporarily detained for brief questioning by police officers who lack probable cause to make an arrest or bring an accusation need not be warned about incrimination and their right to counsel, until such time as the point of arrest or accusation has been reached or the questioning has ceased to be brief and casual and become

sustained and coercive." We adopt the analysis and the conclusion of the well-reasoned opinion in *Manis,* and we hold that in our case there was no violation of the appellant's Fifth Amendment rights against self-incrimination.

The judgment is affirmed.

Stone, P. J., and Gargano, J., concurred.