[Crim. No. 20584. First Dist., Div. One. Nov. 2, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
MARK EDWARD MONTOYA, Defendant and Appellant.

COUNSEL

Michael E. Adams for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Thomas A. Brady and David D. Salmon, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**GRODIN, J.**—Defendant appeals from an order granting probation,[1] which was entered after he pleaded guilty to possession of phencyclidine (PCP) (Health & Saf. Code, § 11377, subd. (a)). Defendant's sole contention is that he should have been given his *Miranda* (*Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]) warnings prior to the questioning which led to the discovery of the PCP.[2] We affirm.

On May 4, 1979, about 11:30 p.m., in San Jose, Police Officer Byron Smith, who was in uniform and driving a marked vehicle, saw defendant's car run a red light. Smith stopped the car, intending to cite

---

[1]Defendant's notice of appeal recites that it is from the order denying his motion to suppress. No such appeal lies; however, the denial may be reviewed on an appeal from the order granting probation. (*People v. Hammonds* (1974) 39 Cal.App.3d 150, 152 [113 Cal.Rptr. 896], cert. den., 419 U.S. 999 [42 L.Ed.2d 274, 95 S.Ct. 316].) Thus, we have construed the appeal to be from that order. (Cal. Rules of Court, rule 31(b).)

[2]A ruling on the *Miranda* issue necessarily became part of the suppression hearing in this case. (See *People v. Superior Court (Zolnay)* (1975) 15 Cal.3d 729, 733-735 [125 Cal.Rptr. 798, 542 P.2d 1390], cert. den., 429 U.S. 816 [50 L.Ed.2d 76, 97 S.Ct. 58].)

defendant for that offense. Smith approached the driver's side of the car and asked for defendant's license. When defendant said he had none, Smith asked for the registration certificate. As defendant opened the glove compartment to get the registration, Smith observed a clear plastic bottle of white tablets, smaller than aspirin, fall out. Defendant caught the bottle and immediately threw it back into the glove compartment. Based on his training in narcotics observation, the officer thought the bottle might contain amphetamines. He asked defendant what was in the bottle,[3] and defendant replied, "What bottle?" Smith said, "The bottle you just shoved back to the back of the glove compartment." Defendant then said, "They are whites." Smith said, "What?" and defendant replied, "You know, bennies."

Upon receiving this reply, the officer removed defendant from the car and arrested him for unlawful possession of amphetamines. The officer gave defendant his *Miranda* rights, searched his car, and found a baggie containing seven PCP cigarettes. Defendant was then arrested for possession of PCP and again *Mirandized*. He admitted that the cigarettes contained PCP and that the pills were amphetamines.[4]

■ Defendant contends that he should have been advised of his *Miranda* rights before he was questioned about what was in the bottle. He concedes that the officer did not at that point have probable cause to arrest him for the possession of amphetamines, but argues that his status as a detainee for a traffic offense nevertheless constituted "custody" for *Miranda* purposes under the test set forth in *People v. Arnold* (1967) 66 Cal.2d 438, 448 [58 Cal.Rptr. 115, 426 P.2d 515]: "[C]ustody occurs if the suspect is physically deprived of his freedom of action in any significant way or is led to believe, as a reasonable person, that he is so deprived." (See also *People v. Herdan* (1974) 42 Cal.App.3d 300, 306-310 [116 Cal.Rptr. 641]; *People v. Blouin* (1978) 80 Cal. App.3d 269, 282-283 [145 Cal.Rptr. 701].)

---

[3]According to Smith, defendant was not under "arrest" when asked what was in the bottle. Smith said he thought the bottle might contain contraband, but he was not sure. His purpose in questioning defendant was to find out what was in the bottle, but at the time he still intended only to cite defendant for running the red light. Defendant said he felt the officer knew what was in the bottle and was asking the question simply to verify his belief. Defendant also said he was quite sure at this point that he was going to be arrested. His status as an "arrestee" will be discussed later.

[4]Subsequent analysis showed that the pills were not amphetamines.

The application of *Miranda* to questioning after a traffic stop was considered in *People* v. *Hubbard* (1970) 9 Cal.App.3d 827 [88 Cal. Rptr. 411], in the context of a strikingly similar fact situation. There, officers stopped a vehicle for a traffic violation, conducted a pat-search of the occupants on suspicion of concealed weapons, and in the process detected what seemed to be a plastic bag containing capsules in the pocket of the defendant. One of the officers asked the defendant if he had any pills in his pocket, and defendant responded, "They're reds. They belong to my mother."

The Second District upheld the trial court's ruling that evidence of this statement was admissible, despite absence of *Miranda* warnings. The court observed that while a person who has been stopped for a traffic offense and is awaiting citation is technically an "arrested person," and is "not free to depart until he has satisfactorily identified himself and has signed the written promise to appear," the "detention which results is ordinarily brief, and the conditions of restraint are minimal." (*People* v. *Hubbard, supra,* 9 Cal.App.3d at p. 833.) Relying upon *People* v. *Manis* (1969) 268 Cal.App.2d 653 [74 Cal.Rptr. 423], which distinguished between "significant" and "transitory" restraints for *Miranda* purposes, and upon *Lowe* v. *United States* (9th Cir. 1969) 407 F.2d 1391, which applied a similar distinction to questioning which followed a roadside stop, the court concluded: "The case at bench arises in a setting not at all comparable to what is discussed in *Miranda.* Here we have two police officers, at night, confronting three strangers on the pavement adjacent to a gasoline service station. The simple question which Officer Weber asked defendant in the presence of his friends presented none of the 'compelling atmosphere' with which the *Miranda* opinion is concerned. We conclude that this is no more than the 'transitory' restraint which, under the reasoning of the *Manis* and *Lowe* cases, *supra,* requires no *Miranda* 'safeguards.'" (*Id.,* at p. 836.)

*Manis* held "that persons temporarily detained for brief questioning by police officers who lack probable cause to make an arrest or bring an accusation need not be warned about incrimination and their right to counsel, until such time as the point of arrest or accusation has been reached or the questioning has ceased to be brief and casual and become sustained and coercive." (*People* v. *Manis, supra,* 268 Cal.App.2d at p. 669.) The court in *Manis* distinguished *People* v. *Ceccone* (1968) 260 Cal.App.2d 886 [67 Cal.Rptr. 499], which held that *Miranda* applied to questions asked after a vehicle stopped once officers had probable cause to arrest for another offense (*People* v. *Manis, supra,*

268 Cal.App.2d at p. 670). *Manis*'s general proposition as well as the distinction have been followed in subsequent cases. (E.g., *In re James M.* (1977) 72 Cal.App.3d 133, 137 [139 Cal.Rptr. 902]; *People v. Herrera* (1970) 12 Cal.App.3d 629, 635-636 [90 Cal.Rptr. 802].) And the Supreme Court has quoted with approval from the *Hubbard* characterization of a traffic detention and "arrest." (*People v. Superior Court (Simon)* 7 Cal.3d 186, 200 [101 Cal.Rptr. 837, 496 P.2d 1205].)

We confess to a certain uneasiness regarding the *Manis-Hubbard* analysis. We are not at all sure that an ordinary citizen, unfamiliar with legal niceties, would feel under any less compulsion to answer questions of a police officer during a traffic stop than during other types of less "transitory" restraints, or because the legal requirements for a lawful arrest had not yet been met. The analysis appears to be well established, however, and we are reluctant to depart from it absent guidance from the Supreme Court.[5] Here, defendant concedes that probable cause to arrest for a drug-related offense did not exist at the time the question was asked, and we observe no convincing basis, in terms of coercive atmosphere, for distinguishing the instant case from *Hubbard*.

The judgment is affirmed.

Racanelli, P. J., concurred.

**ELKINGTON, J.**—I concur.

Concurring generally with my esteemed colleagues' opinion, I respectfully withhold my approval of its last paragraph.

Any question asked by a policeman of anyone, *might* lead to evidence of crime. Paraphrasing the opinion, I feel a certain uneasiness about its dicta suggesting a rule calculated to deny the increasingly criminally victimized public the right to further investigation of crime upon accepted *Miranda* and other constitutional standards, except at the cost of exposing every motorist stopped, as here, for a minor traffic violation, to the frightening litany of a *Miranda* warning.

Appellant's petition for a hearing by the Supreme Court was denied December 30, 1981.

---

[5] Cf. *In re Deborah C.* (1981) 30 Cal.3d 125, 133 [177 Cal.Rptr. 852, 635 P.2d 446], stating: "Courts recognize that nearly all police detention creates an atmosphere of compulsion."