Filed 1/28/15  P. v. Romero CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SANDRA ANN ROMERO,<br><br>    Defendant and Appellant. | 2d Crim. No. B250877<br>(Super. Ct. No. 2008024873)<br>(Ventura County) |

Appellant Sandra Romero was a passenger in a car that police officers stopped for a license tag violation.  When the driver could not offer proof of insurance and neither she nor Romero could produce identification, the car was searched for registration.  During the search, a pipe containing methamphetamine was found.  Romero was convicted by jury of possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)) and possession of a smoking device (*id.* § 11364).  Her sentence was suspended pursuant to Proposition 36 and she was placed on probation for a term of three years including applicable fines and fees.  (Pen. Code, § 1210.1.)[1]

Romero appeals from the denial of her motion to suppress the evidence found in the car and from the admission of statements she made to the arresting officers, which she claims was in violation of *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

_____

[1] All further statutory references are to the Penal Code unless otherwise stated.

In addition, Romero appeals the admission of evidence that the stop occurred in a "high narcotics area" and the denial of her motion for a new trial. We affirm.

FACTS

*Prosecution Evidence*

On June 19, 2008, around 11:13 p.m., Officers Teya Deblauw and Anthony Snow were parked in their patrol car near a "known narcotics residence." They turned to follow a vehicle that was leaving from about half a block from the residence. Noticing that the vehicle's registration tags appeared altered or destroyed, they conducted a traffic stop.

Romero's friend Michele Horn was the driver and Romero was sitting in the passenger seat. Officer Deblauw asked them for identification. Romero and Horn told Officer Deblauw their names but did not have any identification on them. Horn did not have her registration or proof of insurance.

Officer Deblauw had Romero and Horn step out of the vehicle while she searched it for identification. Underneath the front passenger seat, she discovered a glass pipe commonly used to smoke methamphetamine. There was a white substance lodged in the pipe that was later determined to be .24 grams of methamphetamine.

Horn stated that she owned the vehicle but was unaware of any drug paraphernalia in it. She said she had not used drugs in the last seven years. In response to police questioning, Romero admitted that the pipe was hers and that she had placed it underneath her seat. She stated that she had smoked methamphetamine earlier that evening.

Horn was very concerned that her car might be impounded and she would be unable to transport her children. Officer Snow discussed with her the dangers of having drugs and drug paraphernalia near children. He told her what might happen to her if she had children and was found with illegal substances in her vehicle. Officer Snow denied threatening to take away Horn's children.

2

Horn testified that she picked up Romero when Romero called her. She thought Romero had been at work doing apartment management and maintenance. Romero came out of a storage locker area to the side of the house. She did not appear to have a pipe in her hands when she got into the car. Horn thought the officers found the pipe within 10 minutes after she and Romero got out of the car. She testified that Officer Snow told her that if the pipe was hers, she would be going to jail and her kids would be going to a foster home. At the time, Romero was about five to ten feet away from her. Horn was unable to close the windows of her car, and she had experienced problems with people sleeping in her car and leaving trash behind.

## DISCUSSION

### *Motion to Suppress*

Romero moved to suppress the evidence against her, including the pipe, the methamphetamine, and her admission that she owned the pipe, as the products of an unduly prolonged detention. The trial court denied her motion. Romero contends that the admission of this evidence violated the Fourth Amendment's protection against illegal searches and seizures. "In reviewing a suppression ruling, 'we defer to the superior court's express and implied factual findings if they are supported by substantial evidence, [but] we exercise our independent judgment in determining the legality of a search on the facts so found. [Citations.]' [Citation.]" (*People v. Lomax* (2010) 49 Cal.4th 530, 563.)

"Limited warrantless searches for required registration and identification documentation are permissible when, following the failure of a traffic offender to provide such documentation to the citing officer upon demand, the officer conducts a search for those documents in an area where such documents *reasonably may be expected to be found*." (*In re Arturo D.* (2002) 27 Cal.4th 60, 86.) "[T]he area underneath front car seats (including front passenger seats) is not an unusual place to store [a driver's license or other identification or documentation]." (*Id.* at p. 87.) Given the visible trash on the floor of Horn's vehicle, it was reasonable for Officer Deblauw to suspect that Horn's

identification might also have been somewhere on the floor underneath the front passenger seat.

Romero concedes that the officers were justified in making the initial traffic stop and contacting dispatch to verify Horn's identity. She argues that the 35 minutes between the stop and her formal arrest was an unreasonable amount of time to detain her. She asserts that there was no reason to prolong her detention to confirm her identity when, as a passenger, she was not required to carry identification.

The officers were entitled to make Romero and Horn wait outside the vehicle while they verified Horn's identity because they had reasonable suspicion to suspect that Horn—the vehicle's driver—had committed an infraction. (See *People v. Vibanco* (2007) 151 Cal.App.4th 1, 9-10.) That they also attempted to verify Romero's identity is irrelevant because there is no evidence that their doing so extended the detention beyond the time it took to verify Horn's identity. (*Id.* at p. 13.) The 10 minutes that the police took to verify Horn's identity by running a "records check" and searching the car was reasonable.

Thus, the detention and search comported with the Fourth Amendment. It makes no difference that the officers may never have cited Horn for the Vehicle Code violation. "If, in the abstract, the officer does no more than he or she is legally permitted to do, regardless of the subjective intent with which it was done, the arrest and search are objectively reasonable and constitutionally proper." (*People v. Miranda* (1993) 17 Cal.App.4th 917, 924-925.)

### *Miranda*

Romero contends that the trial court violated her Fifth Amendment rights by admitting her statement to the police that she owned the pipe, which she made prior to receiving a *Miranda* warning. We disagree.

A person temporarily detained pursuant to an ordinary traffic stop is not "in custody" for *Miranda* purposes and therefore is not entitled to a *Miranda* warning. (*Berkemer v. McCarty* (1984) 468 U.S. 420, 440.) The safeguards prescribed by *Miranda* only become applicable when "a suspect's freedom of action is curtailed to a 'degree

4

associated with formal arrest.' [Citation.]" (*Ibid.*) Here, the officers briefly questioned Romero during a routine traffic stop. They did not tell her she was not free to leave. Taken in context, their actions were not coercive and did not effectively place Romero in custody such that she was entitled to a *Miranda* warning. (See *People v. Lopez* (1985) 163 Cal.App.3d 602, 609; *People v. Montoya* (1981) 125 Cal.App.3d 807, 811.)

### Admission of Evidence Regarding the "Known Narcotics Residence"

Romero asserts that the trial court erred by admitting evidence that the crime occurred in a "high narcotics area" because it was irrelevant and prejudicial. (Evid. Code, § 352.) Specifically, she challenges the admission of testimony that Officers Deblauw and Snow noticed Horn's vehicle as they were staking out "[o]ne of the houses on [a] street [that] is a known narcotics residence." The trial court's evidentiary rulings are reviewed for abuse of discretion. (*People v. Bryant* (2014) 60 Cal.4th 335, 405.)

The determinative issue is whether the pipe belonged to Romero or Horn. Romero argued to the jury that she lied to the police about owning it in order to spare Horn from having her children taken away from her. The evidence that Romero was picked up near a narcotics house was relevant to prove that it was she, rather than Horn, who owned the pipe. Romero argues that there was "uncontested" testimony that she was picked up from work as opposed to the nearby narcotics house. To the contrary, the location of the narcotics house (along with the fact that it was past 11:00 p.m.) was circumstantial evidence that she was not in fact coming from work as she claimed. Because this evidence was highly relevant and not overly prejudicial, the trial court did not abuse its discretion in admitting it.

### Motion for New Trial

Appellant moved for a new trial on the ground that the jury verdicts were contrary to the evidence. (§ 1181, subd. 6.) The trial court denied her motion. We review this ruling under a deferential abuse of discretion standard.

Romero argues that the trial court abused its discretion by applying the wrong legal standard. In ruling, the trial court had to independently examine all of the evidence to determine whether it was sufficient to prove each required element of the

offenses beyond a reasonable doubt.  (*People v. Clark* (2011) 52 Cal.4th 856, 1002.)  In denying the motion for new trial, the trial court stated that the jury "didn't struggle with the evidence as presented in finding Ms. Romero guilty beyond a reasonable doubt.  [¶] And I'm satisfied that the findings are based on the evidence and the verdict based on the evidence."

The trial court sufficiently explained its ruling.  (See *People v. Lightsey* (2012) 54 Cal.4th 668, 729-730.)  It applied the correct legal standard.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


PERREN, J.


We concur:


GILBERT, P. J.


YEGAN, J.

6

Bruce A. Young, Judge

Superior Court County of Ventura

---

Sarah G. LoPresti, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Senior Assistant Attorney General, James William Bilderback II, Supervising Deputy Attorney General, Alene M. Games, Deputy Attorney General, for Plaintiff and Respondent.