[Crim. No. 5590.    First Dist., Div. Two.    Mar. 22, 1967.]

THE PEOPLE, Plaintiff and Appellant, v. JAMES MICHAEL ALLISON, Defendant and Respondent.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., Assistant Attorney General, and Horace Wheatley, Deputy Attorney General, for Plaintiff and Appellant.

Sam L. Foster for Defendant and Respondent.

BRAY, J.*—The People appeal from order of the Monterey County Superior Court granting defendant's motion to dismiss information.

### QUESTIONS PRESENTED

Sufficiency of evidence to show probable cause of guilt.

Was there an illegal search and seizure and were defendant's statements obtained in violation of his constitutional rights?

### RECORD

Defendant was charged in an information with violation of section 496, Penal Code, receiving stolen property (an automobile tire). He moved under section 995, Penal Code, to dismiss the information on the ground that the evidence at the preliminary examination was not sufficient to show probable cause of guilt and to hold him over for trial in the superior court. That court granted the motion.

### EVIDENCE AT THE PRELIMINARY EXAMINATION

At approximately 7:30 p.m., William and Emma Nelson drove into a parking lot across the street from the Steinbeck Theater in Monterey. As they did so, they saw a man who had been standing near a blue Volkswagen move off in a suspicious manner and walk down the railroad tracks. When the Nelsons crossed the street toward the theater, the man returned to the Volkswagen, lifted the hood, removed a tire and ran off down the tracks again. The Nelsons immediately entered the theater and telephoned the police.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

At 7:58 p.m., the call from the Nelsons was relayed to Officer Gregorio of the Monterey Police Department. He immediately proceeded to the Steinbeck Theater.

The Nelsons' call had also been relayed to Officer Maudlin of the Pacific Grove Police Department. Maudlin, who had been instructed to check the railroad tracks for a suspect carrying a tire, proceeded to Ocean View Boulevard and First Street, where he saw three men standing around a green Volkswagen. One of the men was defendant Allison and another was a man by the name of Fontana. The trunk and one door of the car were open. Maudlin approached the men and detained them for investigation in connection with the tire theft.

While Officer Gregorio was on his way to the Steinbeck Theater, he received a report that the Pacific Grove police had stopped a vehicle and were holding it for investigation in connection with the tire theft. Gregorio picked up the Nelsons and drove them to the location of the green Volkswagen. Both Nelsons identified Fontana as the man who had removed the tire from the trunk of the Volkswagen parked near the Steinbeck Theater. William Nelson then placed Fontana under citizen's arrest.

Upon looking through the window of the green Volkswagen, Officer Gregorio saw a new tire behind the driver's seat. Since defendant was the owner of the car, Gregorio asked him to whom the tire belonged. Defendant replied that it was his tire. Gregorio then removed the tire from the car and confiscated it, informing defendant that it had been stolen by his friend. Gregorio did not recall having asked for defendant's consent before he removed the tire from the car. Gregorio had not placed defendant under arrest, but admitted that he was suspicious of him because he was in the company of the man who had been identified as the tire thief. After removing the tire from defendant's car, Gregorio asked defendant to follow him to the Steinbeck Theater in his own car. Gregorio admitted that at the time he made this request, his investigation had focused upon defendant as well as on Fontana and that he suspected the defendant was involved but was not ''dead sure'' that he was guilty of knowingly possessing the stolen tire.

After returning to the Steinbeck Theater, Gregorio met with the owner of the blue Volkswagen, who identified the tire found in defendant's car as his property. Gregorio did not arrest defendant at the Steinbeck Theater but asked him to drive to the Monterey police station in his own car. When

defendant was questioned at the police station, he insisted that the tire was his and that he had purchased it in Los Angeles but was unable to produce a receipt. He was then placed under arrest by Gregorio. Gregorio admitted that he had at no time advised defendant of his constitutional rights.

### SUFFICIENCY OF EVIDENCE

Defendant contended that his statements to the police were inadmissible as in violation of *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [12 L.ed.2d 977, 84 S.Ct. 1758]; *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]; and *Miranda* v. *Arizona* (1966) 384 U.S. 436, [16 L.Ed. 694, 86 S.Ct. 1602, 10 A.L.R.3d 974],[1] and that seizing of the tire by the police constituted an illegal search and seizure.[2] Defendant further contends that without this evidence, there was no reasonable cause to hold him to answer. ■ It is settled that " 'Reasonable or probable cause' means such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion of the guilt of the accused." (*People* v. *Nagle* (1944) 25 Cal.2d 216, 222 [153 P.2d. 344]; to the same effect, see *Rogers* v. *Superior Court* (1955) 46 Cal.2d 3, 7-8 [291 P.2d 929]; *Robison* v. *Superior Court* (1957) 49 Cal.2d 186, 188 [316 P.2d 1]; *Perry* v. *Superior Court* (1962) 57 Cal.2d 276, 283 [19 Cal.Rptr. 1, 368 P.2d 529].) ■ It is also settled that the proof which will authorize a magistrate to hold a defendant for trial must consist of legal, competent evidence (*Rogers* v. *Superior Court, supra,* at p. 8), and that if his commitment is based entirely on incompetent evidence, the trial court should set aside the information under section 995 of the Penal Code (*Priestly* v. *Superior Court* (1958) 50 Cal.2d 812, 815 [330 P.2d 39]).

### EVIDENCE SUFFICIENT

■ The trial court properly held that the evidence taken from defendant's car (the tire) was not the product of an illegal search and seizure. The tire was not the product of a "search" at all as it was plainly visible to the officers through the car window and open door, and was in a position where

---

[1] At the times of the preliminary examination and the hearing of the section 995 motion, *Miranda* did not apply (see *People* v. *Rollins* (1967) 65 Cal.2d 681 [56 Cal.Rptr. 293, 423 P.2d 221]). However, at the time of the trial herein it will be in effect, so we must consider its applicability to the facts of this case.

[2] At the preliminary examination, defense counsel properly objected to the admission of defendant's statements and the tire.

spare tires are not ordinarily kept. Moreover, at the time the tire was seized, Officer Gregorio had ample reason to believe that defendant had knowingly received stolen property in violation of section 496. Fontana had already been identified by two eyewitnesses as the man who had removed the tire from the Volkswagen, after behaving in a furtive manner, and who had then run off with the tire. He was apprehended near the open door of defendant's Volkswagen and a new automobile tire was in plain view behind the driver's seat. This evidence was sufficient to justify Gregorio in considering that this was the tire stolen by Fontana. When Gregorio then asked defendant, who was apparently the owner of the car, to whom the tire belonged, and he replied that it was his, Gregorio was justified in concluding, under the circumstances, that this answer was untrue and that defendant's motive for giving a false answer lay in his knowledge that the tire had been stolen. Since Gregorio thus had reason to believe that defendant was guilty of violating section 496, he was entitled to search the vehicle and seize the tire. The fact that defendant had not yet been arrested is immaterial, since a search may be justified even though unrelated to an arrest. The true criterion as to the reasonableness of a search is whether the officer had reasonable grounds to believe that defendant may have committed a felony. (*People* v. *Pack* (1962) 199 Cal.App.2d 857, 864 [19 Cal.Rptr. 186].)

The sole ground on which the trial court dismissed the information was that the statements obtained from defendant were violative of *Escobedo* and *Dorado* because Officer Gregorio did not inform defendant of his right to counsel and to remain silent, and that without these statements the evidence did not establish probable cause.

The sole statement made by defendant at the automobile was in answer to Officer Gregorio's question, "Whose tire?" Defendant answered, "it's mine." Clearly the investigation was only in the investigatory stage and neither *Escobedo, Dorado* nor *Miranda* (which added the requirement, in addition to those required by the other cases, that the suspect would be supplied an attorney if he could not obtain one himself) could apply.

Although Gregorio had reason to believe that Fontana had stolen the tire, his only basis for being "suspicious" of defendant consisted of the fact that defendant was in the company of Fontana and was the owner of the car in which the tire had been placed. Gregorio had no way of knowing whether

defendant was aware that Fontana had stolen the tire, or whether, possessing such knowledge, he had consented to its being placed in his car. Had defendant offered an innocent explanation of how the tire came to be placed in his car, the investigation so far as it applied to defendant would necessarily have ended. It was not until defendant gave Gregorio reason to believe that he had lied, thus raising an inference of guilty knowledge, that the situation as to defendant passed the investigatory stage.

The factual situation would thus appear indistinguishable from that in *United States* v. *Konigsberg* (3d Cir. 1964) 336 F.2d 844, where Konigsberg was apprehended in a garage containing stolen clothing and was asked to explain his presence there. The court held that the process was definitely investigative, rather than accusatory, that it had not focused on Konigsberg and that its purpose was not to elicit a confession but to give Konigsberg an opportunity to explain and furnish his side of the story (p. 853). (See also *People* v. *Cotter* (1965) 63 Cal.2d 386, 393 [46 Cal.Rptr. 622, 405 P.2d 862]; *People* v. *Marquez* (1965) 237 Cal.App.2d 627, 631-632, fn. 1 [47 Cal. Rptr. 166].)

" ' [P]ossession of stolen property, accompanied by no explanation, or an unsatisfactory explanation of the possession, or by suspicious circumstances, will justify an inference that the goods were received with knowledge that they had been stolen. The rule is generally applied where the accused is found in possession of the articles soon after they were stolen.' " (*People* v. *Lyons* (1958) 50 Cal.2d 245, 258 [324 P.2d 556]; to the same effect, see *People* v. *McFarland* (1962) 58 Cal.2d 748, 754 [26 Cal.Rptr. 473, 376 P.2d 449].)

It appears from the transcript of the evidence that after defendant had lied to Gregorio, the latter focused his investigation on defendant, as well as on Fontana, and that defendant was actually in custody at the police station, although not formally placed under arrest, and therefore the failure to warn him of his constitutional rights made his answers given there inadmissible. However, as above stated, there was ample evidence without these to show probable cause.

The order is reversed.

Agee, Acting P. J., and Taylor, J., concurred.