72 Cal.App.3d 133 (1977)
139 Cal. Rptr. 902
In re JAMES M., a Person Coming Under the Juvenile Court Law.
KENNETH F. FARE, as Acting Chief Probation Officer, etc., Plaintiff and Respondent,
v.
JAMES M., Defendant and Appellant.
Docket No. 29146.
Court of Appeals of California, Second District, Division Five.
July 28, 1977.
*135 COUNSEL
Cynthia K. Cohan, under appointment by the Court of Appeal, for Defendant and Appellant.
Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Robert F. Katz and Robert R. Anderson, Deputy Attorneys General, for Plaintiff and Respondent.
OPINION
KAUS, P.J.
James Leonard, a minor, was alleged to come within the provisions of Welfare and Institutions Code section 602 based on his possession of "nun-chakus," that is, karate sticks, in violation of Penal Code section 12020. After a hearing, the court sustained the petition, declared the minor to be a ward of the court and ordered that he be taken from his parents and suitably placed. The minor was placed at the American Boy's Ranch in June 1976.

Adjudication Hearing
(1a) On November 19, 1975, at about 8 p.m., Deputy Sheriff Falls saw the minor sitting in the passenger seat of a vehicle and another *136 person in the driver's seat. The deputy saw a Coors beer can on the dashboard and approached the vehicle. Both the minor and the driver got out of the car. While Deputy Falls was detaining the minors near his car, Deputy Vernon, his partner, found two nun-chakus sticks on the floor of the vehicle on the driver's side. The nun-chakus sticks were 12 inches long, about one inch in circumference, wrapped with black tape and connected by a six-inch chain.
Deputy Vernon picked up the sticks, turned to Deputy Falls "and the two subjects, and asked, whose sticks were these." The statement was not directed at any particular person. The minor said "that they were his," and that "he had found them."
At the adjudication hearing and on appeal, the minor contends that his statement that the nun-chakus sticks belonged to him was inadmissible because obtained in violation of his Miranda rights. We agree.
We might state at the outset that the record is maddeningly sparse. Thus, it does not tell us (1) the precise location of the nun-chakus in the car; (2) whether the beer can had been opened and, if so, whether it still contained beer; and (3) whether the driver of the car was also a minor. Nevertheless, we think the trial court erred in admitting appellant's statement.
(2) It may well be that the officers did not believe that they had effected an arrest, but that is immaterial. "The `custodial' element of the accusatory stage when the right to counsel attaches does not depend on the interrogator's subjective intent; `custody occurs if the suspect is physically deprived of his freedom of action in any significant way or is led to believe, as a reasonable person, that he is so deprived.'" (People v. White (1968) 69 Cal.2d 751, 760 [72 Cal. Rptr. 873, 446 P.2d 993], quoting from People v. Arnold (1967) 66 Cal.2d 438, 448 [58 Cal. Rptr. 115, 426 P.2d 515].) Further, under Miranda the vital question is custody, not whether the investigation has focused on the person interrogated (Miranda v. Arizona (1966) 384 U.S. 436, 444, fn. 4 [16 L.Ed.2d 694, 706, 86 S.Ct. 1602, 10 A.L.R.3d 974]; People v. Herdan (1974) 42 Cal. App.3d 300, 307, fn. 10 [116 Cal. Rptr. 641]; People v. Hubbard (1970) 9 Cal. App.3d 827, 834 [88 Cal. Rptr. 411]), and it is immaterial that the questioning relates to a crime other than the one which triggered the custody and is investigatory as far as that offense is concerned. (Mathis v. United States (1968) 391 U.S. 1, 4-5 [20 L.Ed.2d 381, 384-385, 88 S.Ct. *137 1503]; People v. Woodberry (1968) 265 Cal. App.2d 351, 354-357 [71 Cal. Rptr. 165].)[1]
(3) We recognize that a detention not amounting to an arrest does not trigger the need for Miranda warnings. (People v. Manis (1969) 268 Cal. App.2d 653, 663-669 [74 Cal. Rptr. 423].) Nevertheless, as Manis recognizes, a detention for investigation ripens into an arrest, requiring Miranda warnings, as soon as probable cause to arrest has been established. (Id. at p. 670. See generally People v. Herdan, supra, 42 Cal. App.3d 300, 306, fn. 8; People v. Wright (1969) 273 Cal. App.2d 325, 333 [78 Cal. Rptr. 75]; People v. Ceccone (1968) 260 Cal. App.2d 886, 892-893 [67 Cal. Rptr. 499].)
(1b) Applying these rules to the facts of this case, the result, though close, seems clear. First, there is the forgotten contraband  the can of beer. Section 23123.5 of the Vehicle Code forbids minors to possess, transport or have alcoholic beverages under their control while in a motor vehicle. Although the statute presumably does not apply to empty beer cans, it would be most unusual for an "empty" to be displayed on the dashboard of a car. Even on the admittedly imperfect record, it seems clear that probable cause to arrest the minor for the Vehicle Code violation has arisen.
More to the point, there was probable cause to arrest both occupants for possession of the nun-chakus. (4) The rule is well established that access to or possession of contraband provides adequate grounds to arrest and, in the case of an adult, to hold that person to answer. (E.g., Williams v. Superior Court (1969) 71 Cal.2d 1144, 1149-1150 [80 Cal. Rptr. 747, 81 Cal. Rptr. 761, 458 P.2d 987]; Rideout v. Superior Court (1967) 67 Cal.2d 471, 475 [62 Cal. Rptr. 581, 432 P.2d 197]; People v. Jackson (1970) 14 Cal. App.3d 57, 63 [92 Cal. Rptr. 91]; Frazzini v. Superior Court (1970) 7 Cal. App.3d 1005, 1017 [87 Cal. Rptr. 32].) Indeed, often not much more is necessary for a conviction. (E.g., People v. White (1969) 71 Cal.2d 80, 83 [75 Cal. Rptr. 208, 450 P.2d 600] [possession of marijuana]; People v. McKinney (1935) 9 Cal. App.2d 523, 524-525 [50 P.2d 827] [possession of a "sap"]; see also Frazzini v. Superior Court, supra, 7 Cal. App.3d at p. 1017.) (1c) In short, the deputies would have been entitled to arrest both the driver and the passenger, and, absent an adequate explanation by one or both persons would, based on *138 the authorities cited above, have been derelict in their duty had they failed to do so. Although the Attorney General points out that the nun-chakus sticks were on the driver's side of the vehicle, suggesting that the officers had no reason to arrest the minor, this case does not involve traces of marijuana or a weapon secreted on the driver's floorboard. This case involves two 12-inch sticks connected by a 6-inch chain. (See People v. Vermouth (1971) 20 Cal. App.3d 746, 755-756 [98 Cal. Rptr. 65].)
The minor was effectively under arrest for possession of a dangerous weapon and should have been given his Miranda warnings before any questions concerning that possession were asked.
Since the Attorney General appears to concede that, absent the confession, the evidence is insufficient to sustain the petition, the order of the juvenile court declaring the minor to be a person under Welfare and Institutions Code section 602 must be reversed.

Disposition Hearing
(5) The minor contends that the court abused its discretion by ordering that he be taken from his parents and suitably placed. In the event that the matter arises in any subsequent proceedings, we note that an order of commitment by a juvenile court which removes a minor from the custody of his parents is proper when the parents are unable to exercise proper care and control. (In re Randy B. (1976) 62 Cal. App.3d 89, 97-98 [132 Cal. Rptr. 720].) There was evidence that the minor, age 15 at the time of these proceedings, had first come to the attention of the court when he was 12 years of age in September 1973, and had thereafter had difficulties. Although his mother testified that she had no trouble controlling him during the few months he had been home  the minor having been detained from January 30 to March 15, 1976  it appeared that previously the mother had not been able to control the minor. The minor had lived with his father for a period of only about three months, and although his father was willing to have the minor live with him, he worked from 6 p.m. to 2:30 a.m. Although, as appellate counsel properly points out, the minor's difficulties in school were related in part to the school's inability to protect the minor from gang attacks, the juvenile court was entitled to give great weight to the opinion of the probation officer that the minor would benefit from a less hostile environment.
The order is reversed.
Stephens, J., concurred.
*139 ASHBY, J.
I respectfully dissent.
The facts are very simple. Deputy Sheriff Falls saw two males seated in a parked car. There was a beer can on the dashboard. The minor, who was 15, was in the passenger's seat and his companion was the driver. As Deputy Falls approached, both the driver and the minor got out of the car. While Falls talked to them, Deputy Vernon looked into the car and found two nun-chakus sticks on the floor of the driver's side of the vehicle. He picked them up and asked whose sticks they were. The question was not directed specifically at the minor, who said "that they were his," and that "he had found them."
At the time the question was asked, appellant was not under arrest nor was he in custody within the meaning of Miranda v. Arizona, 384 U.S. 436, 444 [16 L.Ed.2d 694, 706, 86 S.Ct. 1602, 10 A.L.R.3d 974]. He was subject only to temporary detention for purposes of investigation, which is not the type of significant restraint to which the Miranda rules apply. (People v. Manis, 268 Cal. App.2d 653, 663-669 [74 Cal. Rptr. 423]; People v. Hubbard, 9 Cal. App.3d 827, 833 [88 Cal. Rptr. 411].) The majority's conclusion that the minor was effectively in custody because there was probable cause to arrest him is not supported by the record.
As to Vehicle Code section 23123.5, there is no evidence in the record that the beer can contained beer or any other fluid, alcoholic or not. In speculating to the contrary, the majority violates the rule that the appellate court must view the evidence in the light most favorable to the judgment and indulge in all reasonable factual inferences which favor the trial court's ruling. (See People v. Lawler, 9 Cal.3d 156, 160 [107 Cal. Rptr. 13, 507 P.2d 621].)
In regard to Penal Code section 12020, the nun-chakus sticks were on the floor of the driver's side of the vehicle, not appellant's side. Appellant was only a passenger, not the driver or the owner. These facts would not have been sufficient to prove that appellant possessed them. (People v. Myles, 50 Cal. App.3d 423, 429 [123 Cal. Rptr. 348]; People v. Zyduck, 270 Cal. App.2d 334, 336 [75 Cal. Rptr. 616].)
Conceding this evidence alone would not have sustained the petition, the majority concludes that it was nevertheless sufficient to have sustained an arrest, and that therefore the minor was "effectively under arrest." (Ante, p. 138.) In relying upon such a narrow and technical approach, the majority ignores the reality of the situation and strains to *140 exclude the evidence. The fallacy in the majority's reasoning is its reliance on cases where there was only one suspect. This fails to take into consideration the special circumstances where there are two possible suspects under facts suggesting that only one of them is guilty. In these circumstances the police may properly engage in further investigation, without complying with Miranda, in order to exonerate one suspect and avoid having to arrest both.
The question of ownership of the nun-chakus sticks was not specifically directed to appellant and, viewed realistically, the logical and natural object of the inquiry was appellant's companion, not him. Had the companion, who seemed the likely owner of the sticks, admitted they were his, the investigation would have ceased as to appellant. The majority itself states that the officers would have arrested both the driver and the passenger "absent an adequate explanation by one or both persons." (Ante, p. 137.) Deputy Vernon's general inquiry regarding ownership of the nun-chakus sticks provided the opportunity for that "adequate explanation." It was a reasonable and appropriate means of exonerating a possibly innocent party so as to avoid an unnecessary arrest.
The majority says that "under Miranda the vital question is custody, not whether the investigation has focused on the person interrogated." (Ante, p. 136.) The cases cited by the majority for this proposition clearly are distinguishable from the facts of the instant case and the cases cited in this dissent. Miranda v. Arizona, 384 U.S. 436, 444, footnote 4 [16 L.Ed.2d 694, 706, 86 S.Ct. 1602, 10 A.L.R.3d 974]; Mathis v. United States, 391 U.S. 1, 4-5 [20 L.Ed.2d 381, 384-385, 88 S.Ct. 1503]; and People v. Woodberry, 265 Cal. App.2d 351, 354-357 [71 Cal. Rptr. 165], all involve defendants who were either in jail or in a police department interrogation room at the time they were questioned. People v. Hubbard, 9 Cal. App.3d 827 [88 Cal. Rptr. 411], held that police who stopped a vehicle which went through a red light did not violate Miranda by asking the defendant if he had any pills after feeling them during a pat-down. The majority overlooks the fact that the extent to which the investigation has begun to focus on the suspect is a crucial element in determining whether there is custody within the meaning of Miranda, supra. (See People v. Herdan, 42 Cal. App.3d 300, 307, fn. 10 [116 Cal. Rptr. 641].)
Ample authority supports the conclusion that, if the police might have technical probable cause to arrest two suspects, a general investigation likely to lead to the exoneration of one of the suspects is not restricted by *141 the Miranda rules. In People v. Alesi, 67 Cal.2d 856 [64 Cal. Rptr. 104, 434 P.2d 360], the police arrested the defendant on a warrant at the apartment of a Miss Kline. They found a marijuana cigarette in the defendant's pocket. The defendant was asked if it was his and he answered yes. He was then asked, "`"It's weed, isn't it?"'" He answered, "`"Yes."'" (Id. at p. 864.) The Supreme Court at pages 864-865 held: "... The queries were a natural product of the fast-moving events and gave the deputies an opportunity to exonerate an innocent person, Miss Kline, who was also in the apartment at the time and could have been involved in ownership of the contraband. The questions concluded the inquiry into the newly discovered crime, marijuana possession, and we hold that under the circumstances this was a routine investigation and not violative of Escobedo-Dorado."
The same reasoning has been applied in cases governed by Miranda rather than Escobedo-Dorado. In People v. Allison, 249 Cal. App.2d 653 [57 Cal. Rptr. 635], witnesses saw a man named Fontana remove a tire from a Volkswagen. Fontana then ran off with the tire. He was apprehended near the open door of defendant's Volkswagen and a new automobile tire was in plain view behind the driver's seat. The defendant who apparently was the owner of the car was asked to whom the tire belonged. He replied that it was his, and was arrested. The court held that the Miranda warning was not required and stated that: "Although Gregorio had reason to believe that Fontana had stolen the tire, his only basis for being `suspicious' of defendant consisted of the fact that defendant was in the company of Fontana and was the owner of the car in which the tire had been placed. Gregorio had no way of knowing whether defendant was aware that Fontana had stolen the tire, or whether, possessing such knowledge, he had consented to its being placed in his car. Had defendant offered an innocent explanation of how the tire came to be placed in his car, the investigation so far as it applied to defendant would necessarily have ended. It was not until defendant gave Gregorio reason to believe that he had lied, thus raising an inference of guilty knowledge, that the situation as to defendant passed the investigatory stage." (249 Cal. App.2d at pp. 657-658.)
In People v. Kasperek, 273 Cal. App.2d 320 [77 Cal. Rptr. 904], the police arrested a person named Simmons in possession of a stolen tape recorder. Simmons said he purchased it from the defendant. The police knocked at the defendant's door and asked if he knew Simmons and if he had sold him a tape recorder. The defendant answered "`Yes,'" and was arrested. The court held at page 323, "... Until appellant had given *142 his affirmative answers to the officers' preliminary questions, the logical probabilities of the situation strongly support the inference that the primary focus of suspicion rested upon Simmons, the known possessor of the stolen property, rather than upon appellant. However, appellant's answers were such as to shift the focus of attention toward him and to create that strong suspicion of guilt which justified the ensuing arrest."
The evidence establishes that appellant was only temporarily detained while the officer engaged in a general investigation which, in the particular circumstances, was likely to lead to the exoneration of appellant. Appellant was not in custody or deprived of his freedom in a significant way within the meaning of Miranda v. Arizona, supra, 384 U.S. 436, 444 [16 L.Ed.2d 694, 706], until, unexpectedly, appellant rather than his companion stated that the nun-chakus sticks were his. The officer's investigation was both appropriate and reasonable.
I would affirm the order.
A petition for a rehearing was denied August 16, 1977. Ashby, J., was of the opinion that the petition should be granted. Respondent's petition for a hearing by the Supreme Court was denied September 22, 1977. Bird, C.J., and Clark, J., were of the opinion that the petition should be granted.
NOTES
[1] This distinction makes inapplicable the holding of People v. Alesi (1967) 67 Cal.2d 856, 864 [64 Cal. Rptr. 104, 434 P.2d 360], cited in the dissent. Alesi was tried before the effective date of Miranda. (See People v. Rollins (1967) 65 Cal.2d 681, 686 [56 Cal. Rptr. 293, 423 P.2d 221].)