[Civ. No. 24815. Fourth Dist., Div. One. Mar. 22, 1982.]

In re PABLO C., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
PABLO C., Defendant and Appellant.

COUNSEL

John R. Farris, Jr., for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Harley D. Mayfield and Louis R. Hanoian, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

WIENER, J.—Pablo C., a minor, appeals the order declaring him to be a ward of the court. (Welf. & Inst. Code, § 800.) The question pre-

sented is the effect of the presumed taint of a non-*Mirandized*[1] confession on a later *Mirandized* confession. As we shall explain, we have concluded there is insufficient evidence to support a factual finding that Pablo's later confession was obtained in a manner and under circumstances which removed the illegality resulting from the failure to have given Pablo a *Miranda* warning when he was first interrogated We therefore reverse the order.

*Factual and Procedural Background*

On February 8, 1981, about 6 p.m. as Mr. Olinger and his family were driving eastbound on Highway 94 approaching the 22d Street bridge in San Diego, concrete debris hit the pavement a few feet in front of their car causing pieces of concrete to scratch and dent their vehicle. About 15 to 20 minutes later, Olinger telephoned the police and related the incident.

On that date and at approximately the same hour, 6 p.m., California Highway Patrolman Riordan was patrolling eastbound on Highway 94. He was paying particular attention to the 22d and 25th Street bridges because rock throwing incidents from those bridges between the hours of 5 p.m. and 8 p.m. had previously been reported to him. As a result of those incidents, he had contacted one individual whose car had been damaged and had examined a piece of concrete embedded in the hood of that vehicle. Upon seeing three to five people at the 22d Street over-crossing, he decided to investigate and proceeded to the bridge. He stopped three individuals and asked whether they had knowledge of anyone or seen anyone throwing rocks. When they answered in the negative, Riordan released them and went over to where he first saw them. He found what was left of a concrete watermain cover, pieces of which were similar to the piece which he observed during his earlier investigation. He recontacted two of the individuals, one of whom was fifteen-year-old Pablo, detained them and called the police.

San Diego Police Officers Yanes and Reddets responded to the dispatch to assist the highway patrol. En route they received another dispatch telling them of the report received from Olinger. When they arrived, Riordan told Yanes what had occurred explaining he found the boys on the bridge where rocks had been thrown only minutes before. Yanes took Pablo aside and asked him whether he was involved in the

---

[1]The holding of *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974] is so well known we have adopted the jargon it has generated.

rock throwing incident. Pablo admitted he was the one responsible. Yanes then gave Pablo his *Miranda* rights, which Pablo agreed to waive and again admitted he was the culprit. He was taken home and released into his parents' custody.

Two days later, San Diego Police Officer Montejano went to Pacific Beach Junior High School to interview Pablo and the other juvenile who had been arrested. Pablo was brought into the office of Vice Principal Kelner. In Kelner's presence, Montejano Mirandized Pablo and explained he was there to question him about his participation in what had occurred two days earlier. Pablo again confessed.

A petition (Welf. & Inst. Code, § 602) charged Pablo with throwing objects at a vehicle on a freeway (Veh. Code, § 23110, subd. (b)) and assault with a deadly weapon (Pen. Code, § 245, subd. (a)). At the jurisdictional hearing, Pablo's counsel objected to admitting any confession on the ground each violated the proscription of *Miranda*. The court partially agreed finding a *Miranda* warning was necessary before the police started any interrogation of Pablo and suppressed his first confession. Because the court concluded the second confession was infected by the first, it suppressed that confession also. Finding the third confession to be sufficiently free from the initial taint, the court admitted it, found Pablo committed the Vehicle Code offense, and placed him on two years probation.

**▓** *Sufficient Evidence Supports the Court Ruling That a Miranda Warning was Necessary Before Pablo was First Questioned*

The People first respond to Pablo's "taint" argument by explaining a *Miranda* warning was unnecessary during the investigatory questioning of Pablo citing *People* v. *Manis* (1969) 268 Cal.App.2d 653, 669 [74 Cal.Rptr. 423] and its progeny. *Manis* holds "persons temporarily detained for brief questioning by police officers who lack probable cause to make an arrest or bring an accusation need not be warned about incrimination and their right to counsel, until such time as the point of arrest or accusation has been reached or the questioning has ceased to be brief and casual and become sustained and coercive." (*Id.*, at p. 669.) Whether the interrogating officers believe they have effected an arrest is immaterial. (*In re James M.* (1977) 72 Cal.App.3d 133, 136 [139 Cal.Rptr. 902].) **▓** However, a *Miranda* warning must be given as soon as probable cause to arrest has been established (*id.*, at p. 137) or as soon as the suspect is physically deprived of his action in

any significant way or reasonably believes so. (*People* v. *Arnold* (1967) 66 Cal.2d 438, 448 [58 Cal.Rptr. 115, 426 P.2d 515]; *People* v. *Herdan* (1974) 42 Cal.App.3d 300, 306-310 [116 Cal.Rptr. 641].) Factors which may be considered to determine whether custody has attached include "(1) the site of the interrogation; (2) whether the investigation has focused on the subject; (3) whether the objective indicia of arrest are present; and (4) the length and form of questioning." (*People* v. *Herdan, supra*, at p. 307, fns. omitted.)

■ In this case, the facts establish that after first being stopped and questioned by Riordan, the two suspects were detained until the San Diego police officers arrived. During that time, Riordan separated the boys when they started to converse in Spanish. He had one suspect stand a short distance away, keeping the other one close to him. When they were turned over to the officers, Officer Yanes testified he believed investigation of the rock throwing incident had focused upon them. The questioning by persons from 2 different law enforcement agencies resulted in a detention which lasted some 25-30 minutes. The physical setting, adjacent to the scene of the crime, did little to detract from any objectively coercive forces otherwise at play. (Compare *People* v. *Miller* (1969) 71 Cal.2d 459, 480 [78 Cal.Rptr. 449, 455 P.2d 377], cert. den., 406 U.S. 971 [32 L.Ed.2d 672, 92 S.Ct. 2417].) When we examine these facts in the manner most favorable to the court's ruling, we believe there is sufficient evidence to support the findings foundational to the court's legal conclusion that Pablo was entitled to a *Miranda* warning before being questioned by Officer Yanes.

■ *There is Insufficient Evidence to Dissipate the Taint of the Earlier Illegally Obtained Confession*

As a general rule where an accused makes one confession and at a later time again confesses, it is presumed the second confession is a product of the first. (*People* v. *Johnson* (1969) 70 Cal.2d 541, 547 [75 Cal.Rptr. 401, 450 P.2d 865, 43 A.L.R.3d 366], cert. den. 395 U.S. 969 [23 L.Ed.2d 758, 89 S.Ct. 2120]; disapproved on other grounds in *People* v. *DeVaughn* (1977) 18 Cal.3d 889, 899, fn. 8 [135 Cal.Rptr. 786, 558 P.2d 872].) This presumption flows from the judicial perception that "'after an accused has once let the cat out of the bag by confessing, no matter what the inducement, he is never thereafter free of the psychological and practical disadvantages of having confessed. He can never get the cat back in the bag. The secret is out for good.'" (*People* v. *Spencer* (1967) 66 Cal.2d 158, 167 [57 Cal.Rptr.

163, 424 P.2d 715] quoting from *United States* v. *Bayer* (1947) 331 U.S. 532, 540 [91 L.Ed. 1654, 1660, 67 S.Ct. 1394].) But the presumption which flows from this generalized psychological view of the cause and effect relationship between the first and second confessions must nevertheless remain rebuttable in light of the innumerable differences in human behavior. Regardless of the psychological accuracy of the statement that a prior involuntary confession "lets the cat out of the bag," a subsequent confession may still be admitted under the proper circumstances. (See *United States* v. *Toral* (9th Cir. 1976) 536 F.2d 893, 896.)

What are the proper circumstances necessitates a factual inquiry in each case with the state bearing the burden of showing the causative link between the two confessions has been broken. (*People* v. *Spencer, supra*, 66 Cal.2d 158, 168.)

In a context involving the similar problem of whether extrajudicial statements should be suppressed as having been obtained as a result of a Fourth Amendment violation, an illegal arrest, our Supreme Court in *People* v. *DeVaughn, supra*, 18 Cal.3d 889 [135 Cal.Rptr. 786, 558 P.2d 872] adopted a *Wong Sun* analysis. (*Wong Sun* v. *United States* (1963) 371 U.S. 471 [9 L.Ed.2d 441, 83 S.Ct. 407].) Before the challenged statements may be admitted, they have to result from an independent "'act of free will to purge the primary taint.' [Citation.]" (*Brown* v. *Illinois* (1975) 422 U.S. 590, 601-602 [45 L.Ed.2d 416, 426, 95 S.Ct. 2254].) The connection between the unlawful arrest and the statement must become so attenuated as to dissipate the taint. (*People* v. *DeVaughn, supra*, 18 Cal.3d at p. 897; *Brown* v. *Illinois, supra*, 422 U.S. 590, at pp. 598-599 [45 L.Ed.2d 416, at p. 424].) No single fact is dispositive of this issue and a court must inquire into the proximity of the arrest to the time of the confession, in addition to examining the circumstances occurring after the arrest and continuing until the confession is made. (*People* v. *DeVaughn, supra*, 18 Cal.3d at p. 898.) Obviously, where a minor is concerned, a court must also look to the minor's age, his mental state, education, degree of intelligence, experience and familiarity with the law. (See *In re Peter G.* (1980) 110 Cal.App.3d 576, 583 [168 Cal.Rptr. 3].)

Using that approach here, the record is devoid of any evidence of the events occurring in the two-day period following the suppressed confessions. Moreover, since Pablo confessed in the vice principal's office, a school setting generally associated with discipline, where he was con-

fronted by an officer who knew of his involvement in the rock throwing incident, Pablo's statements affirmatively appear to be the product of his earlier statements. In light of the evidence on this issue, the only conclusion which we may reach is that Pablo, unaware his previous statements could not be used against him, had no reason to remain silent.

The People stress that in each of the cases Pablo has cited to this court in which the "cat out of the bag argument" was successfully made, some form of coercion was used in eliciting the first inadmissible confession.[2] In effect, the People say that where the *Miranda* error is "technical" only, and the first confession in response to questioning is not *actually* coerced, later voluntary, *Mirandized* confessions are necessarily admissible. This argument, however, not only obscures the prophylactic purposes of *Miranda*, but overlooks the mandate and scope of that holding. (See *In re Martinez* (1970) 1 Cal.3d 641, 648-649 [83 Cal.Rptr. 382, 463 P.2d 734], cert. den., 400 U.S. 851 [27 L.Ed.2d 88, 91 S.Ct. 71].) Once *Miranda* is required, it must be given regardless of whether the failure to have given it in an individual case had any empirical significance. Unless expressly waived, the *Miranda* warning is the *sine qua non* of the admissibility of every confession for otherwise that confession is deemed coerced as a matter of law. (See *People* v. *Murtishaw* (1981) 29 Cal.3d 733, 753 [175 Cal.Rptr. 738, 631 P.2d 446].) Accordingly, after our review of the entire record, we conclude there is insufficient evidence to support a finding the People satisfied their burden of proving Pablo's last confession was an independent act of his choosing, free from the taint which the law has placed upon his earlier non-Mirandized confession.

*Disposition*

The order is reversed.

Levitt, J.,* concurred.

---

[2]The People refer to *People* v. *Jimenez* (1978) 21 Cal.3d 595, 612 [147 Cal.Rptr. 172, 580 P.2d 672] (defendant's first confession resulted from a promise of leniency); *People* v. *Johnson* (1871) 41 Cal. 452, 454 (first confession elicited from a promise of leniency); *People* v. *Jones* (1944) 24 Cal.2d 601, 610 [150 P.2d 801] (first confession extracted after appellant was tortured for four days); *People* v. *Sanchez* (1969) 70 Cal.2d 562, 575 [75 Cal.Rptr. 642, 451 P.2d 74], cert. dis., 394 U.S. 1025 [23 L.Ed.2d 743, 89 S.Ct. 1646] (first confession elicited from physical abuse of appellant); *In re Garth D.* (1976) 55 Cal.App.3d 986, 995 [127 Cal.Rptr. 881] (physical and psychological pressure forced the first confession).

*Assigned by the Chairperson of the Judicial Council.

**STANIFORTH, Acting P. J.**—I concur.

The majority opinion correctly assesses the record. It is void of evidence relevant to what, if anything, occurred to dissipate the taint from the first two improper, non-*Mirandized* statements. This vacuum is due in part, to a statement, in effect a concession, made by defense counsel in oral argument. Counsel stated he was not prepared to argue and no case law supported the theory that the confession in the vice principal's office was tainted by the earlier statements. The court offered counsel more time to prepare an argument *but counsel declined.* The court concluded "All right, I will adopt your view of it . . . ." Counsel's conduct resulted in the trial court's decision to admit the statement without proper evaluation. The concession cut off the court's inquiry into the continuing effect of the taint and relieved the prosecution of its burden of proof.

Therefore, two errors require reversal. First, there is no evidence to support the trial court's admission of the third confession. The trial court, in determining whether a *Miranda* taint had dissipated, should have evaluated whether the third confession was an independent act of free will (see *In re Peter G.* (1980) 110 Cal.App.3d 576, 583 [168 Cal.Rptr. 3]; cf. *Brown v. Illinois* (1975) 422 U.S. 590 [45 L.Ed.2d 416, 95 S.Ct. 2254]; *Wong Sun v. United States* (1963) 371 U.S. 471 [9 L.Ed.2d 441, 83 S.Ct. 407]) in order to overcome a presumption the later confession is a product of the tainted confession (*People v. Johnson* (1969) 70 Cal.2d 541, 547 [75 Cal.Rptr. 401, 450 P.2d 865, 43 A.L.R.3d 366]). Analysis as to whether the third confession was an independent act of free will and not the product of the tainted confession is similar to a consideration of voluntariness. Factors relevant to voluntariness are the minor's age, mental state, education, intelligence, experience, and familiarity with the law. (*In re Peter G., supra,* 110 Cal.App.3d at p. 583.) Other important factors are the location of the questioning, the form of the questions, and the coerciveness of the atmosphere in which questioning took place. (See *United States v. Toral* (9th Cir. 1976) 536 F.2d 893, 896.) Relevant, too, are the temporal proximity of the confession to the crime, any intervening circumstances, and the nature of the police misconduct. (See *People v. DeVaughn* (1977) 18 Cal.3d 889 [135 Cal.Rptr. 786, 558 P.2d 872]; *Brown v. Illinois, supra,* 422 U.S. 590.)

Second, although there is a natural reluctance to find counsel's "concession" was absolutely unjustified as a matter of tactics, on the face of

this record, the concession was not in the best interest of his client, it falls short of vigorous representation and it most certainly resulted in the withdrawal of a potentially meritorious defense.