[No. A024651. Sixth Dist. Jan. 11, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES LOPEZ, Defendant and Appellant.

**COUNSEL**

Joan E. Stein, under appointment by the Court of Appeal, and Beraldo & Holly for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Robert R. Granucci, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**AGLIANO, J.**—Defendant Charles Lopez appeals from a judgment of conviction, upon a jury verdict, of possession of stolen property (Pen. Code, § 496). The sole error asserted to justify reversal is that he was not advised of his rights per *Miranda*[1] before being questioned by a police officer. Therefore, he contends, his statements in response to questioning were improperly admitted in evidence.

We find defendant's contention to be without merit and affirm the judgment.

The following facts were developed at the Evidence Code section 402 hearing held to determine the admissibility of defendant's statements:

On June 5, 1983, at 9:15 p.m., Santa Clara County Deputy Sheriff Larry Robbins observed a speeding station wagon which almost struck his patrol

---

[1]*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

car. He pursued it for a mile and a half to two miles with lights and siren on, before it pulled over. The occupants initially hid by slumping down in the station wagon, but defendant, who was in the back seat, sat up and then slumped down again. Robbins approached the vehicle after Deputy Sheriff Nancy Ludcke arrived in another patrol car. He ordered the three occupants, Mr. Machado, who was the driver, and Dora Ramirez and defendant out of the station wagon. Two more officers arrived on the scene. The occupants initially stood in front of Robbins' patrol car where Robbins questioned the driver, Machado, about the manner of his driving.

Officer Ludcke told Officer Robbins that she had observed two tool boxes and several power tools on the floorboard of the back seat of the car with the names "John M. Aguilera" and "John Aguilera/Rosa" stenciled on the tool boxes. Officer Robbins asked the car's occupants their names and when none matched the names on the tool boxes, he became suspicious.

Officer Robbins asked Machado who the tools belonged to and what name was stenciled on the tool boxes. Machado answered that the tools belonged to "Alex," whose name was on the tool boxes, and that he had borrowed them from "Alex" about an hour before. He could not state where "Alex" lived or his last name. He said that defendant was with him when he picked up the tools.

Officer Robbins left Machado at the front of the patrol car and approached defendant, who was then to the rear of the patrol car with another officer. Robbins asked defendant if he was present when the tools were picked up. Defendant said "[n]o." Robbins asked him whose tools they were and defendant answered: "Alex." Robbins asked him how he knew and defendant was unable to explain. Machado then blurted out to defendant that he was there when the tools were picked up, and defendant said: "Oh, yeah. I was." Robbins asked him who "Alex" was and defendant explained that he was a friend of Machado's.

Robbins then examined the tools and ran a radio check on them by their serial numbers. One was reported as stolen. Defendant was then placed under arrest for possession of stolen property. Fifteen to twenty minutes elapsed between the stop and arrest.

Defendant's motion to exclude his statements to Officer Robbins from evidence on the ground the officer failed to advise him of his *Miranda* rights prior to questioning was denied and Robbins testified to defendant's statements.

*Miranda* v. *Arizona, supra,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], is a particular application of the federal consti-

tutional privilege against self-incrimination, which provides that: "No person . . . shall be compelled in any criminal case to be a witness against himself . . . ." (U.S. Const., Amend. V.)

Prior to *Miranda,* courts were, of course, concerned with the voluntariness of statements made by the defendant to police. (See *Miranda, supra,* 384 U.S. at pp. 461-466, fn. 33 [16 L.Ed.2d at pp. 716-719], and cases there cited.) But the *Miranda* warning was made a preinterrogation requirement to further ensure that incriminating statements made by criminal suspects in response to police custodial questioning were voluntary.

*Miranda*'s concern was "the compulsion inherent in custodial surroundings . . . ." (*Id.,* at p. 458 [16 L.Ed.2d at p. 714].) Thus, the court fashioned a "protective device" (*id.,* at p. 466 [16 L.Ed.2d at p. 719]) to curb the employment of police coercive techniques in eliciting incriminating statements from criminal suspects in custody. The device is the well-known advice to a person in custody respecting his rights to remain silent and to have an attorney appointed and present prior to and during any interrogation. (*Id.,* at pp. 444-445, 467-474, 478-479 [16 L.Ed.2d at pp. 707, 719-723, 726].)

█ This case turns on whether defendant was in "custody" when his statements were made. Under *Miranda* it is clear: "Custody has become the critical element which triggers the necessity for warning against incrimination, . . ." (*People* v. *Manis* (1969) 268 Cal.App.2d 653, 667 [74 Cal.Rptr. 423].) █ *Miranda* advisement is required prior to police interrogation "after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." (*Miranda, supra,* 384 U.S. at p. 444 [16 L.Ed.2d at p. 706].)

While *Miranda* presented the clearest example of custody, namely the official isolation of a criminal suspect in a police station (*id.,* at p. 445 [16 L.Ed.2d at p. 707]), there is no doubt that *Miranda* applies "to protect persons in all settings in which their freedom of action is curtailed in any significant way." (*Id.,* at p. 467 [16 L.Ed.2d at p. 719].) For example, *Orozco* v. *Texas* (1969) 394 U.S. 324, 326-327 [22 L.Ed.2d 311, 314-315, 89 S.Ct. 1095], held that *Miranda* advice was required when four police officers questioned a suspect in his own bed after entering his room and awakening him at 4 a.m., when they considered him to be under arrest and not free to leave. And, *Berkemer* v. *McCarty* (1984) — U.S. —, — [82 L.Ed.2d 317, 327-331, 104 S.Ct. 3138, 3144-3148] recently held that *Miranda* advice was required *after* a driver was formally arrested following a traffic stop for a misdemeanor traffic offense.

 A further aspect of "custody" must be examined. Prior decisions have not been consistent in its application, but most have acknowledged an objective test of custody. *People* v. *Ceccone* (1968) 260 Cal.App.2d 886, 892 [67 Cal.Rptr. 499], stated that a person is in custody when: "[A]s a reasonable person he is led to believe that he is physically deprived of his freedom of action in any significant way." (Accord, *People* v. *White* (1968) 69 Cal.2d 751, 760 [72 Cal.Rptr. 873, 446 P.2d 993]; *People* v. *Herdan* (1974) 42 Cal.App.3d 300, 306 [116 Cal.Rptr. 641]; *In re James M.* (1977) 72 Cal.App.3d 133, 136 [139 Cal.Rptr. 902]; *In re Pablo C.* (1982) 129 Cal.App.3d 984, 988-989 [181 Cal.Rptr. 468].) The United States Supreme Court has recently given unequivocal approval to the objective test of custody, stating: "[T]he only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation. [Fn. omitted.]" (*Berkemer, supra,* — U.S. —, — [82 L.Ed.2d 317, 336, 104 S.Ct. 3138, 3152].)

A line of cases (some relied on by defendant) accepts as a ground for determining the existence of custody either that the arresting officer had probable cause to arrest or more generally that the police investigation had focused on the suspect. (E.g., *People* v. *Bolinski* (1968) 260 Cal.App.2d 705, 717-718 [67 Cal.Rptr. 347]; *Ceccone, supra,* 260 Cal.App.2d 886, 892-893; *Manis, supra,* 268 Cal.App.2d 653, 666-670; *Herdan, supra,* 42 Cal.App.3d 300, 307; *In re James M., supra,* 72 Cal.App.3d 133, 137-138; *People* v. *Carter* (1980) 108 Cal.App.3d 127, 131 [166 Cal.Rptr. 304].) To the extent that these cases have taken the officer's information or state of mind as the ground for determining the existence of custody, we find them at odds with the more recent holdings of the United States Supreme Court. (*Berkemer* v. *McCarty, supra,* — U.S. —, —, fn. 22 [82 L.Ed.2d 317, 331, 104 S.Ct. 3138, 3148] (probable cause to arrest does not determine custody) and *Beckwith* v. *United States* (1976) 425 U.S. 341, 346-347 [48 L.Ed.2d 1, 7-8, 96 S.Ct. 1612] (focus of the investigation does not determine custody).) " ' "It was the compulsive aspect of custodial interrogation, and not the strength or content of the government's suspicions at the time the questioning was conducted, which led the Court to impose the *Miranda* requirements with regard to custodial questioning." ' " (*Ibid.*)

The defendant herein was not under arrest prior to questioning. The issue narrows to whether defendant was in custody for *Miranda* purposes prior to formal arrest. The Supreme Court in *Berkemer, supra,* — U.S. at page — [82 L.Ed.2d at pages 334-335, 104 S.Ct. at page 3151], declined to impose a uniform requirement of *Miranda* advice as soon as a vehicle is stopped, although recognizing "that a traffic stop significantly curtails the 'freedom of action' of the driver and the passengers, if any, of the detained vehicle." (*Id.,* at p. — [82 L.Ed.2d at p. 332, 104 S.Ct. at p. 3149].) How-

ever, the court "decline[d] to accord talismanic power to the phrase in the *Miranda* opinion" (*ibid.*) which purported to require *Miranda* advice upon the deprivation of a suspect's freedom of action "in any significant way." (*Miranda, supra,* 304 U.S. at p. 444 [16 L.Ed.2d at p. 706].) Instead the court stated: "Fidelity to the doctrine announced in *Miranda* requires that it be enforced strictly, but only in those types of situations in which the concerns that powered the decision are implicated." (*Berkemer, supra,* — U.S. at p. — [82 L.Ed.2d at p. 333, 104 S.Ct. at p. 3149].)

"In *People* v. *Manis* (1969) 268 Cal.App.2d 653 [74 Cal.Rptr. 423] the court drew a distinction between a 'significant' restraint, which triggers the *Miranda* warnings, and a 'transitory' restraint, which does not. The *Manis* opinion points out that when the *Miranda* opinion speaks of a person deprived of his freedom 'in any significant way,' it necessarily implies that there are other restraints which are classified as not significant, and not calling for the *Miranda* warnings as a prelude to questioning. [¶] Furthermore, as the *Manis* opinion takes note, the word 'significant' did not appear in the text of this phrase in the original publication of the *Miranda* opinion, but was added in final editing by insertions in four places. This editorial change emphasizes the Supreme Court's intention to preserve a distinction." (*People* v. *Hubbard* (1970) 9 Cal.App.3d 827, 833 [88 Cal.Rptr. 411].)

Thus, a contrast is drawn between the relatively noncompulsive atmosphere of an ordinary temporary detention and the inherently compulsive atmosphere of an actual arrest. The Supreme Court described the difference as follows: "Under the Fourth Amendment, we have held, a policeman who lacks probable cause but whose 'observations lead him reasonably to suspect' that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly [fn. omitted] in order to 'investigate the circumstances that provoke suspicion.' [Citation.] '[T]he stop and inquiry must be "reasonably related in scope to the justification for their initiation."' [Citation.] [Quoting *Terry* v. *Ohio* (1968) 392 U.S. 1, at p. 29 (20 L.Ed.2d 889, at p. 910, 88 S.Ct. 1868).] Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. But the detainee is not obliged to respond. And, unless the detainee's answers provide the officer with probable cause to arrest him [fn. omitted], he must then be released. [Fn. omitted.] The comparatively nonthreatening character of detentions of this sort explains the absence of any suggestion in our opinions that *Terry* stops are subject to the dictates of *Miranda.*" (*Berkemer, supra,* — U.S. at p. — [82 L.Ed.2d at p. 334, 104 S.Ct. at pp. 3150-3151].) The court reasoned that a routine, typical, ordinary traffic stop does not have the police-dominated atmosphere which is *Miranda*'s concern, but is relatively noncoercive. (*Berkemer, su-*

*pra,* — U.S. at p. — [82 L.Ed.2d at pp. 331-336, 104 S.Ct. at pp. 3148-3152].) The court added, however: "If a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by *Miranda.*" (*Id.,* — U.S. at p. — [82 L.Ed.2d at p. 335, 104 S.Ct. at p. 3151].)

Case law has identified a number of objective indicia of custody for *Miranda* purposes, such as (1) whether the suspect has been formally arrested,[2] (2) absent formal arrest, the length of the detention,[3] (3) the location, (4) the ratio of officers to suspects, (5) the demeanor of the officer, including the nature of the questioning.[4] (See *Herdan, supra,* 42 Cal.App.3d 300, 306-307, and cases there cited.)

*Berkemer, supra,* — U.S. —, — [82 L.Ed.2d 317, 335-336, 104 S.Ct. 3138, 3151-3152], illustrates the application of objective criteria to determine whether *Miranda*-type custody exists. A motorist was stopped on suspicion of driving while intoxicated. The detained driver was not initially placed under formal arrest although the officer had reasonable cause to arrest and had early determined that arrest would be the outcome. Only a short period of time elapsed prior to questioning during which the driver was administered field sobriety tests. The detention took place at a location visible to passing motorists. There was a single police officer on the scene who asked the suspect a modest number of questions, including whether he had taken intoxicants. In short, the suspect was not subjected to the "functional equivalent of formal arrest." The court held that a reasonable person in the position of the defendant would not have felt compelled to answer questions. Under these circumstances *Miranda* advice was required only after formal arrest.

In the case before us, defendant was neither told that he was under arrest nor that he was not free to leave. He was detained during a traffic stop but

---

[2] As *People* v. *Hubbard, supra,* 9 Cal.App.3d 827, shows, a person may be technically under arrest after being stopped for a traffic violation (*id.,* at pp. 832-833), without being subjected to the type of custodial interrogation which requires *Miranda* advice during a transitory detention. (*Id.,* at pp. 835-836.)

[3] A brief, temporary, transitory detention at the place of encounter may not have the inherently compelling aspect of the type of custody contemplated by *Miranda.* (*Berkemer, supra,* — U.S. —, — [82 L.Ed.2d 317, 332-333, 104 S.Ct. 3138, 3149]; *People* v. *Manis, supra,* 268 Cal.App.2d 653, 667-669 [74 Cal.Rptr. 423]; *Hubbard, supra,* 9 Cal.App.3d 827, 836; *People* v. *Montoya* (1981) 125 Cal.App.3d 807, 809-811 [178 Cal.Rptr. 211].)

[4] Accusatory questioning is more likely to communicate to a reasonable person in the position of the suspect, that he is not free to leave. (E.g., *White, supra,* 69 Cal.2d 751, 761.) General investigatory questioning may convey a different message. (*People* v. *Hill* (1974) 12 Cal.3d 731, 767 [117 Cal.Rptr. 393, 528 P.2d 1], overruled on other grounds in *People* v. *DeVaughn* (1977) 18 Cal.3d 889, 896, fn. 5 [135 Cal.Rptr. 786, 558 P.2d 872].)

he was not the driver. Although he was ordered out of the car along with the driver, the latter was first questioned about the nature of his driving. The detention had been relatively brief—it appears less than 15 minutes—at the point when the defendant was questioned, and the questions were asked at the roadside, not a place of isolation. The defendant was about a car-length from Machado when questioned, so the two of them were apparently able to hear, as well as see, each other. While there were four officers present, they did not congregate around defendant but were dispersed among the three suspects. One officer alone approached and questioned the defendant. The nature of the questioning was investigatory rather than accusatory. Defendant was asked simply whether he was present (as Machado had stated) when Machado borrowed the tools, and if he knew their owner.

Finally, defendant's self-contradiction was not in response to Deputy Robbins' questions, but to Machado's statement reminding him that he was present when the tools were borrowed.

We conclude that defendant was not, in the above cited circumstances, subjected to the coercive, police-dominated atmosphere which was *Miranda*'s concern; that he was therefore not in custody when questioned; and that *Miranda* advice was not required. The trial court's denial of defendant's motion to exclude his statements from evidence was therefore correct.

The judgment is affirmed.

Panelli, P. J., and Brauer, J., concurred.