Filed 8/5/14  In re A.J. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 977(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 977(b).  This opinion has not been certified for publication or ordered published for purposes of rule 977.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re A.J., a Person Coming Under the Juvenile Court Law. _____ THE PEOPLE,       Plaintiff and Respondent,     v. A.J.,       Defendant and Appellant. | B250167 (Los Angeles County Super. Ct. No. FJ51030) |

APPEAL from orders of the Superior Court of Los Angeles County, Charles Scarlett, Judge.  Affirmed.

Kimberly Howland Meyer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson and Mark E. Weber, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A.J. (appellant) appeals the juvenile court's orders of wardship (Welf. & Inst. Code, § 602) following findings appellant committed the offenses of possessing marijuana for sale (Health & Saf. Code, § 11359) and possessing an enumerated tool or marking substance with the intent to commit vandalism or to affix graffiti (Pen. Code, § 594.2, subd. (a)). The juvenile court ordered appellant home on probation.

He contends: (1) his admission the backpack was his was obtained without an advisement of, and waiver of, *Miranda* rights (*Miranda v. Arizona* (1966) 384 U.S. 436); and (2) if the officer's testimony appellant acknowledged the backpack containing the contraband was properly excluded from evidence, the evidence supporting the juvenile court's order is insufficient to support the orders of wardship.

## BACKGROUND

In a petition filed on February 6, 2013, it was alleged the 17-year-old appellant came within the provisions of section 602 of the Welfare and Institutions Code in that he possessed marijuana for sale (count 1), he committed vandalism with $400 or less of damage by marking a table belonging to a Jack-In-The-Box restaurant (count 2) and he possessed markers and a scribing tool for the purpose of committing vandalism or affixing graffiti (count 3).

1. *The People's case-in-chief.*

At about 9:30 p.m. on December 2, 2012, Santa Monica Police Officer Martin Jauregui (Officer Jauregui) and his partner stopped a car on Lincoln Boulevard for a traffic violation. There were three youths in the car. Officer Jauregui had the driver step out of the car. The officer saw the handle of a gun in the pocket of the driver's door. He handcuffed the driver and had him sit at the rear of the car on the curb. The officer retrieved and examined the gun. It was made of plastic. He replaced the plastic gun in its door pocket.

When Officer Jauregui was standing next to open car door and while he was retrieving and replacing the plastic gun, he could smell a strong odor of marijuana emanating from inside the vehicle. Consequently, Officer Jauregui had appellant, the front right passenger, and a rear passenger alight. On the way to the rear of the car,

2

Officer Jauregui told appellant he was detained and not under arrest. At the rear of the car, the officer handcuffed appellant, patted him down and sat him on the curb. In appellant's pocket, the officer found a "scribing tool." Then the officer had the rear passenger get out of the car and sit on curb with the other two youths. The officer had detained the youths.

Due to the marijuana odor, the officer searched the car's interior. The officer found a half an ounce of marijuana inside a canister in the car's center console. Officer Jauregui found a backpack on the front passenger floorboard. Inside the backpack, he found about nine Ziploc baggies containing in all 3.6 grams of marijuana, a digital scale, a little over $72 in currency and a wallet containing appellant's college identification and a citation for vandalism issued by the Los Angeles Police Department, which bore appellant's name. There were also various "markers" and "streaks" inside the backpack The officer found a sticker inside that bore the text, "DOG STV" and "77."

After Officer Jauregui opened and searched the backpack, he asked appellant whether the backpack was his. Appellant replied, "Yes."

At that point, a woman working at the Jack-in-the-Box restaurant across the street approached Officer Jauregui. She complained the detained youths had "tag[ged]" one of the tables at the restaurant. Officer Jauregui went across the street and observed a Jack-in-the-box table that had a "scribe" or graffiti on its surface that said, "77." By "scribe," the officer explained a "scribe is like a tool used to deface a table." It "kind of engraves inside the wood." The officer testified the 77 on the table was in the same style as the sticker the officer had just found inside the backpack. Additionally, the "scribing tool" found in appellant's pocket was consistent with the tool that had made the 77 on the table.

Officer Jauregui issued a citation to the driver for possessing the marijuana inside the console. He did not question the driver about the ownership of the backpack.

3

At the adjudication, Officer Jauregui gave his opinion the marijuana inside the backpack was possessed for sale. The officer also opined the scribing tool retrieved from appellant's pocket and the markers and streakers were the type of equipment used to deface property.

2. *The defense.*

Appellant testified on his own behalf. He acknowledged he, Eric and a third youth, were driving in Eric's car. Officer Jauregui stopped the car after Eric pulled out of the Jack-in-the-Box restaurant onto Lincoln Boulevard. After Eric parked at the curb, Officer Jauregui had appellant alight. The officer asked for appellant's wallet, which appellant took out of his pocket; it was not inside the backpack as Officer Jauregui claimed. The wallet contained appellant's identification and his money, about $62. The officer then had appellant and the youth in the back seat alight. One by one, the officer took appellant and the youth previously seated in the back seat to the rear of the car and also had them sit on the curb.

After the three youths were seated on the curb, Officer Jauregui searched the car. The officer recovered the marijuana from the inside of the console. Then the officer searched the backpack, which at the adjudication appellant claimed belonged to Eric. Appellant claimed Officer Jauregui had asked him whether the backpack was his, and he had replied, "No." The officer spoke to Eric, then let Eric and the other youth go. The officer drove appellant to the station.

At the adjudication, appellant claimed the item in evidence, the "scribe" taken from appellant's pocket, was a fish tank filter. He said the sticker inside the backpack did not belong to him.

Appellant agreed he had not revealed to Officer Jauregui the backpack belonged to Eric. Appellant explained he did not do so as he believed "it's not my place to say it's someone else's" and "I just said it wasn't mine." He denied selling or possessing marijuana. He acknowledged the youths had been sitting for five minutes at a table in the Jack-in-the-Box restaurant. He denied he marked the table and claimed he did not see his companions carve the 77 into the table.

4

Appellant's mother testified that shortly after Thanksgiving in 2012, she gave her son about $60 in cash so that he could purchase a temporary, inexpensive cellphone. The battery on his existing cell phone was not charging. Appellant's father testified appellant had several backpacks, and the father did not recognize the one in court as appellant's. The father agreed appellant helped him clean his fish tanks, and the item in appellant's pocket might have been an implement appellant had purchased to assist in cleaning the fish tanks.

3. *The juvenile court's findings*.

The juvenile court sustained the petition as to counts 1 and 3. It commented as far as the trial court was concerned, the marijuana could have belonged to both youths, appellant and Eric. It found Officer Jauregui's testimony to be credible, and it believed the backpack belonged to appellant. It said it had a reasonable doubt as to the vandalism charge alleged in court 2, but it was sustaining count 3, which alleged the possession of enumerated tools or marking substances with the intent to commit vandalism or to affix graffiti.

## DISCUSSION

1. *The necessity for a* Miranda *warning*.

  a. *Background*

Prior to the adjudication, appellant made a motion to suppress the statement made to Officer Jauregui by appellant acknowledging the backpack was his. The ground for the motion was appellant's statement was made during a custodial interrogation in the absence of a *Miranda* advisement and a waiver of rights. (*Miranda, supra*, 384 U.S. 436.)

During the motion, Officer Jauregui testified that when he stopped the car, appellant, the right front passenger, immediately got out. Such conduct indicated to the officer appellant probably did not want to speak to a police offer. Officer Jauregui ordered appellant to reenter the car, and appellant complied. The officer had the driver alight. The officer escorted the driver to the rear of the car. The officer saw the gun and

5

examined it and determined it was plastic.  Officer Jauregui smelled the odor of marijuana.

After the driver was handcuffed and seated at the rear of the car, Officer Jauregui had appellant and the rear passenger alight.  They were escorted individually to the rear of the car, handcuffed and also seated at the curb.  Officer Jauregui and his partner were present.  Neither officer drew a gun during the encounter.  When Officer Jauregui escorted appellant to the rear of the car, he told appellant he was detained pending the officers' investigation.

The officers searched the car's interior.  They found marijuana inside the car.  Officer Jauregui then searched the backpack and found appellant's identification.  At that point, Officer Jauregui asked appellant whether the backpack was his.  It was the first question posed to appellant.

Appellant's adjudication counsel argued the detention was functionally an arrest.  Counsel urged in the circumstances, no reasonable person would believe he was free to leave, and a *Miranda* warning was required prior to questioning.

The prosecutor argued handcuffing was the only factor indicating Officer Jauregui's inquiry constituted a custodial interrogation.  The handcuffing was not determinative of an arrest, however, as here, appellant got out of the car initially without a request, and the officer saw what appeared to be a gun in the car door.  These factors gave the officers a reason to handcuff to protect officer safety.   Furthermore, the marijuana odor required a search giving the officers further reason to handcuff the youths to ensure they stayed behind the car while the search was conducted.  The prosecutor urged the inquiry concerning the ownership of the backpack was investigatory, not accusatory.

Without comment, the juvenile court denied the motion to suppress.

b. *The analysis*

The relevant legal principles are as follows.

" 'An interrogation is custodial, for purposes of requiring advisements under *Miranda*, when "a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." ' (*People v. Moore* (2011) 51 Cal.4th 386, 394-395 . . . , quoting *Miranda*, *supra*, 384 U.S. at p. 444.) Whether a person is in custody is an objective test; the pertinent question being whether the person was formally arrested or subject to a restraint on freedom of movement of the degree associated with a formal arrest. (*People v. Leonard* (2007) 40 Cal.4th 1370, 1400 . . . .) '[C]ustody must be determined based on how a reasonable person in the suspect's situation would perceive his circumstances.' (*Yarborough v. Alvarado* (2004) 541 U.S. 652, 662 . . . .)" (*People v. Linton* (2013) 56 Cal.4th 1146, 1167.)

All the circumstances of the interrogation are relevant to this inquiry, including the location, length and form of the interrogation, the degree to which the investigation was focused on the defendant, and whether any indicia of arrest were present. (*People v. Boyer* (1989) 48 Cal.3d 247, 272.) Various objective indicia of custody for *Miranda* purposes may include the following: "(1) whether the suspect has been formally arrested; (2) absent formal arrest, the length of the detention; (3) the location; (4) the ratio of officers to suspects; and (5) the demeanor of the officer, including the nature of the questioning." (*People v. Forster* (1994) 29 Cal.App.4th 1746, 1753; see also, *People .v Lopez* (1985) 163 Cal.App.3d 602, 608.)

" 'Whether a defendant was in custody for *Miranda* purposes is a mixed question of law and fact. [Citation.] When reviewing a trial court's determination that a defendant did not undergo custodial interrogation, an appellate court must 'apply a deferential substantial evidence standard' [citation] to the trial court's factual findings regarding the circumstances surrounding the interrogation, and it must independently decide whether, given those circumstances, "a reasonable person in [the] defendant's position would have felt free to end the questioning and leave" [citation].' (*People v. Leonard, supra*, 40 Cal.4th at p. 1400.)" (*People v. Moore, supra*, 51 Cal.4th at p. 395.)

7

In our view, there was no custodial interrogation triggering a need for a *Miranda* warning and waiver.

"*Miranda* warnings are not required 'simply because the questioning takes place in the station house, *or because the questioned person is one whom the police suspect*.' (*Oregon v. Mathiason* (1977) 429 U.S. 492, 495 . . . , italics added.)" (*Moore, supra*, 51 Cal.4th at p. 402.)

Initially, Eric was detained for a traffic offense. Eric, not appellant, was the car's driver. After the officer saw a plastic gun in the car and smelled the odor of marijuana, the officer wished to search the interior of the vehicle to determine whether the youths possessed marijuana. In order to safely conduct the search, the officers handcuffed the youths and had them sit at the curb, presumably while one of the two officers looked on. The youths were at roadside in a public place when Officer Jauregui made the critical inquiry of appellant regarding ownership of the backpack. The officers' conduct was not overbearing. The officer explicitly explained to appellant he was not under arrest, but he was detained. It was apparent from the circumstances and the officers' conduct, the youths were the subjects of only a brief, temporary detention.

Only two police officers were present. The officers did not draw their guns. At the time Officer Jauregui searched the car, the officers were unaware the youths might have committed malicious mischief with respect to a table in the Jack-in-a-Box. Only a short period of time had elapsed during the detention prior to Officer Jauregui's inquiry of appellant. The inquiry whether appellant owned the backpack was the first inquiry made of the youths. The nature of the question was investigatory, not accusatory.

A reasonable person in appellant's position would not have felt compelled to answer the question addressed to him. Appellant was not subjected to a coercive, police-dominated atmosphere, which was *Miranda*'s concern. In this instance, the *Miranda* advisement and waiver was required only after appellant was taken into custody and transported to the police station.

The trial court's denial of the motion to suppress the statement is supported by the adjudication evidence and the relevant case law on the point.

8

2. *The sufficiency of the evidence*.

In appellant's other contention, he asserts, "Had [his] statement been properly excluded, there was insufficient evidence to establish that appellant possessed marijuana for sale or tools to commit vandalism or graffiti. Reversal of the jurisdictional finding is therefore required."

Appellant's contention is expressly dependent upon the result of his *Miranda* contention above. Appellant argues that without appellant's statement he owned the backpack, the evidence is insufficient to sustain the petition and to support the juvenile court's orders. As this court has concluded the trial court properly ruled there was no custodial interrogation and no *Miranda* warning or waiver was required, we need not address appellant's contention of insufficient evidence. Moreover, the evidence adduced at the adjudication is ample to support the juvenile court's orders.

## DISPOSITION

The orders under review are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


KLEIN, P. J.


We concur:


KITCHING, J.



ALDRICH, J.


9