Filed 1/30/25  P. v. Webb CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOHN ALLEN WEBB, JR.,<br><br>    Defendant and Appellant. | 2d Crim. No. B335343<br>(Super. Ct. No. 23F-06427)<br>(San Luis Obispo County) |

John Allen Webb, Jr., appeals from the judgment after a jury convicted him of conspiracy to possess a controlled substance for sale (Pen. Code, § 182, subd. (a)(1), Health & Saf. Code, § 11351, count 1), possession of a controlled substance while armed with a firearm (Health & Saf. Code, § 11370.1, subd. (a), count 2), felon in possession of a firearm (Pen. Code, § 29800, subd. (a)(1), count 3), felon in possession of ammunition (Pen. Code, § 30305, subd. (a)(1), count 4), falsely identifying himself to a peace officer (Pen. Code, § 148.9, subd. (a) (misdemeanor), count 5), and possession of a controlled substance in jail (Pen. Code, § 4573.6, subd. (a), count 6).  The jury also found true an

enhancement that he was on bail during the commission of counts 1 through 4 (Pen. Code, § 12022.1). The trial court sentenced Webb to three years in state prison.[1]

Webb contends the trial court erred when it admitted his statements in violation of *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*) and admitted text messages referencing earlier drug deals. He also contends that cumulative errors resulted in an unfair trial. We affirm.

FACTUAL AND PROCEDURAL HISTORY

Two San Luis Obispo County Sheriff's deputies drove into the parking lot of a McDonald's and Chevron gas station/convenience store in Nipomo at 9:14 p.m. They saw two white Toyota Corollas parked next to each other. Webb and Kameron M.[2] were sitting in the 2018 Corolla owned by Kameron M.'s wife. Abigail M., later identified as Webb's girlfriend, was in the 2017 Corolla owned by Webb's grandmother. As deputies drove into the lot, the three occupants of the Corollas got out and walked into the store.

The deputies went on another call, then a few minutes later returned to the parking lot. Abigail M. walked to a gray Toyota Tundra truck with an orange ladder rack, got in the rear seat, and covered her face with her hands.

Deputy Joel Molina opened the door to the truck and saw Abigail M. had injection sites on her arm. She was holding a

---

[1] The court also imposed a consecutive sentence of three years for a violation of Penal Code section 4573, subdivision (a) in case 22F-07479-D.

[2] First names and last initials are used to protect personal privacy interests. (Cal. Rules of Court, rule 8.90(b)(10) & (11).)

torch-style lighter typically used by narcotics users.  He ordered her out of the truck.  She dumped white powder from a plastic baggie onto the ground which later tested to be methamphetamine.  Kameron M. told Deputy Daniel Brooks that Abigail M. was Webb's girlfriend.  A hypodermic syringe containing fentanyl was found in the car associated with Kameron M.

Brooks went inside the store.  He heard the toilet in the men's room flush approximately six times in less than a minute.  Brooks believed the occupant was flushing narcotics.  Brooks went into the men's room and saw through a gap to the single stall a person he believed to be Webb.

When Webb left the restroom, Brooks observed symptoms that made him "suspect . . . potential narcotics use": Webb was fidgety and sweaty, his pupils were constricted, and an elevated pulse was visible on his neck.  They then had a conversation recorded on Brooks's body camera.  After conducting drug recognition tests, Brooks concluded Webb was under the influence of a stimulant and arrested him.  Webb was handcuffed, placed inside a police car, and read his *Miranda* rights.

Deputies searched the car associated with Webb and found an EBT card with his name, a container with a powdery residue, empty coin-sized plastic bags, a digital scale, a credit card reader, a .38 Special bullet, a handgun holster, and a gun lock.  In the driver's side door pocket was a hypodermic needle containing methamphetamine.  A loaded .40 caliber handgun was found under the trash can liner in the trash can in the men's room.

A cell phone was seized from Webb's pocket and searched pursuant to a search warrant.  It showed that at 5:00 that

afternoon, Richard B. sent a Facebook Messenger message to Webb's phone asking if he had a "half piece" (12.5 grams of fentanyl) for a buyer. Webb's phone responded that he had already sold it, but would get another one. They agreed on a price of $500 and arranged for "Shane" to pick up the drugs at the Nipomo McDonald's at 8:45 p.m. At 8:33 p.m., Richard B. messaged that Shane was in a gray Toyota Tundra truck with an orange ladder rack. A message from Webb's phone said he was at pump 11 in his grandmother's white 2017 Corolla.

Richard B. then messaged that Shane was delayed until 9:15 p.m. Webb's phone responded that he had things to do so he would "leave it with abby in my car and he can meet her." At 9:21, Richard B. messaged, "Tell her to go to truck." Richard B. messaged, "Sheriff took off he said." Webb's phone responded, "Negative."

At 9:35 p.m., Webb's phone texted, "Shane this is rick's buddy what's up. [¶] I'm hiding in the bathroom I need u to take me Back Home tell me when it's clear to mob out."

Webb's phone contained a Facebook message at 9:45 p.m. to his former girlfriend asking for a name, date of birth, and social security number. She responded with the name Michael F. and a birth date.

Webb's phone included a photograph of his California identification card. It also included a photograph of two handguns on the legs of a person sitting in a car. The individual's face was not visible in the photograph, but he was wearing a sweatshirt similar to one found in Webb's car. One of the handguns was identified as the one found in the men's room trash can.

The phone included messages where the user identified

4

themselves with Webb's nickname, JDub.  The phone was logged into the Facebook page of "John Webb," with a profile photo of Webb.  After reviewing the contents of the phone, a detective concluded it belonged to Webb and he was the primary user.

The "half piece" and the $500 were never found.  The defense presented no evidence at trial.

DISCUSSION

*Miranda*

An individual who is in custody must be advised of their constitutional rights before they are interrogated.  (*Miranda*, *supra*, 384 U.S. at p. 444.)  On appeal, we defer to the trial court's factual findings supported by substantial evidence and independently determine from the factual findings whether appellant was subjected to custodial interrogation for *Miranda* purposes.  (*People v. Waidla* (2000) 22 Cal.4th 690, 730.)

Following a hearing (Evid. Code, § 402), the trial court admitted the first part of the audiovisual body camera recording of the interaction between Brooks and Webb after he left the men's room.  Webb contends the court erred because it was a custodial interrogation without *Miranda* advisements.  We disagree.

When Webb left the men's room, Brooks observed symptoms of drug use and "detain[ed] him to speak to him about [Brooks's] suspicions."  Three deputies in uniform were present.  It was "made clear to [Webb] . . . that he was not free to leave."  Webb was not advised of his *Miranda* rights at that time.  Webb sipped from a drink in his hand during the interaction.

Brooks asked Webb, "Hey, what's up man?" and "What's goin' on tonight?"  Webb said he did not know.  Brooks asked, "What's the deal with you?"  Webb responded, "I was just in there

5

taking a shit."  The conversation continued:

"[Brooks]: Are you on probation?

"[Webb]: No.

"[Brooks]: Parole?

"[Webb]: No.

"[Brooks]: When was the last time you were arrested?

"[Webb]: Uh, a couple of years ago.

"[Brooks]: What'd you get arrested for a couple years ago?

"[Webb]: Uh, possession, or something like that.

"[Brooks]: Oh.  Possession.

"[Webb]: Yeah.

"[Brooks]: When was the last time you used anything?

"[Webb]: Uh, s–like three, four months?  I don't know."

Webb then gave Brooks the false name and date of birth of Michael F. that his former girlfriend had messaged his phone. Later in the conversation, Webb asked if he was under arrest and was told he was "just being detained."  Brooks then conducted a drug recognition examination "before [he] came to an opinion as to whether he in fact was under the influence for purposes of arresting him."

The trial court reviewed the body camera recording.  The court stated that Webb was detained and the deputy conducted drug recognition tests, which "tends to indicate that he was investigating."  The court noted the "conversational tone" of the interaction and denied the motion to exclude the statements.

### 1.  Custody

*Miranda* advisements are required when "there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest."  (*California v. Beheler* (1983) 463 U.S. 1121, 1125.)  But "*Miranda* warnings are not required

6

'simply . . . because the questioned person is one whom the police suspect.' " (*Ibid*.) " 'Absent "custodial interrogation," *Miranda* simply does not come into play.' " (*People v. Clair* (1992) 2 Cal.4th 629, 679.) "[T]he term 'custody' generally does not include 'a temporary detention for investigation' where an officer detains a person to ask a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." (*People v. Farnam* (2002) 28 Cal.4th 107, 180.)

Here, Brooks's questions about Webb's use of intoxicants and the subsequent administration of drug recognition tests were part of an investigative detention to determine whether Webb was under the influence of drugs. The investigation was similar to the roadside field sobriety tests for driving under the influence and questions about use of intoxicants the United States Supreme Court has held to be noncustodial. (*Berkemer v. McCarty* (1984) 468 U.S. 420, 423, 442.)

Webb's reliance on *People v. Manis* (1969) 268 Cal.App.2d 653, 668-669, does not compel a contrary result. That case, decided shortly after *Miranda*, held that *Miranda* warnings need not be given "by police officers who lack probable cause to make an arrest or bring an accusation." (*Manis*, at p. 669.) Similarly here, Brooks had not yet formed probable cause to arrest Webb during his questioning. Brooks detained Webb to investigate whether he was under the influence and the trial court made that finding. It was not until Brooks completed the drug recognition tests that he arrested Webb. Subsequent cases also make clear that probable cause to arrest does not determine custody for *Miranda* purposes. (*Berkemer v. McCarty, supra*, 468 U.S. at p. 435, fn. 22; *People v. Lopez* (1985) 163 Cal.App.3d 602, 606-607

[declining to follow *Manis*].)

As we noted in *People v. Davidson* (2013) 221 Cal.App.4th 966, 971-973, whether a person is in custody for purposes of *Miranda* depends on the totality of the circumstances including whether the person has been formally arrested, the length of the detention, whether the location is a coercive environment, the ratio of officers to suspects, and whether the officer's demeanor is "brief and casual" or "aggressive, confrontational, accusatory, coercive, or sustained." Here, Webb was not formally arrested or handcuffed during the detention. The detention was brief. It occurred, not in a police station, but in a convenience store with the public present. Only Brooks spoke to Webb and the other deputies stood to the side. And, as noted by the trial court, it had a "conversational tone." Under the totality of the circumstances, we conclude Webb was not in custody for purposes of *Miranda*.

### 2. Interrogation

"While the term 'interrogation' refers to any words or actions on the part of police that are reasonably likely to elicit an incriminating response, it does not extend to inquiries . . . that are 'essentially "limited to the purpose of identifying a person found under suspicious circumstances or near the scene of a recent crime[.]" ' " (*People v. Farnam*, *supra*, 28 Cal.4th at p. 180.) As the high court recognized in *Miranda*, "General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. . . . In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present." (*Miranda, supra*, 384 U.S. at pp. 477-478, fn. omitted.)

Here, Brooks asked Webb his name and what he was doing.

8

Questions about probation or parole would indicate whether he was subject to a warrantless search. (*People v. Reyes* (1998) 19 Cal.4th 743, 752; see *People v. James* (1977) 19 Cal.3d 99, 115 [requesting search consent does not require *Miranda* warnings].) Questions about drug use would help resolve whether the symptoms he displayed were caused by use of narcotics. (See *People v. Forster* (1994) 29 Cal.App.4th 1746, 1751, 1754 [questioning DUI suspect detained in customs office about alcohol consumption not custodial interrogation].) We conclude the questions were part of an investigative detention, not an interrogation. The trial court did not err in admitting the statements.

*Previous text messages*

Webb contends the trial court erroneously admitted text messages prior to the day of the charged offenses. We again disagree.

Over defense objection, the trial court admitted several text and Facebook Messenger messages setting up drug deals starting two months before the charged offenses and continuing until an hour before those offenses. One text message to Webb's phone says, "Johnny please call me back it's time to make money$$$$$$." Also included was a Facebook Messenger thread the day before the charged offenses between Webb's phone and Omar G. setting up a drug sale and stating that the person using Webb's phone was at pump 11 at McDonald's Chevron. At 8:33 the evening of the arrest, Webb's phone texted Omar "I'm in Nipomo."

Uncharged conduct evidence is inadmissible to show a defendant's propensity to commit a particular crime. (Evid. Code, § 1101, subd. (a); *People v. Jackson* (2016) 1 Cal.5th 269, 299.)

9

However, it may be admitted "when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, [or] absence of mistake or accident . . .) other than his or her disposition to commit such an act."  (Evid. Code, § 1101, subd. (b).)

Even if offered to prove a fact other than propensity, "[t]he court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  (Evid. Code, § 352.)

We review admission of evidence pursuant to Evidence Code sections 1101 and 352 for abuse of discretion.  (*People v. Lindberg* (2008) 45 Cal.4th 1, 23, 25.)  "The exercise of discretion is not grounds for reversal unless " ' "the court exercised its discretion in an arbitrary, capricious or patently absurd manner." ' "  (*People v. Ochoa* (2001) 26 Cal.4th 398, 437.)  We conclude the trial court did not abuse its discretion here.

The jury was instructed that the messages were admitted for a "limited purpose," i.e., "only to evaluate the defendant's statements and to prove the defendant's intent as to Count 1, conspiracy."  The messages were relevant to show that Webb's intent to possess drugs was not only for personal use (like the syringe with methamphetamine found in his car), but also for purposes of sale.  (*People v. Scally* (2015) 243 Cal.App.4th 285, 292 [texts showed intent to engage in pimping and negated claim defendant was innocent bystander to prostitution activity].)

Moreover, the evidence would have been properly admitted to show Webb's identity as the person who sent the texts regarding the charged conspiracy.  The earlier messages include a reference to "Johnny" and to another drug deal at the same

pump 11 at the McDonald's Chevron.  This evidence was relevant to counter the defense argument that the evidence did not show Webb was the person "behind the keyboard" who sent the messages on his phone.  And contrary to Webb's contention, it was not offered to establish identity through a distinctive "signature" requiring a high degree of similarity with the charged offenses.  (*People v. Ewoldt* (1994) 7 Cal.4th 380, 403.)  Instead, the messages were admissible as circumstantial evidence that Webb was the person using his phone.  (See *People v. Robinson* (2000) 85 Cal.App.4th 434, 445.)

"The 'prejudice' which [Evidence Code] section 352 seeks to avoid is that which ' " 'uniquely tends to evoke an emotional bias against the defendant as an individual *and which has very little effect on the issues.'* " ' " (*People v. Cage* (2015) 62 Cal.4th 256, 275.)  In our view, the discussion of other drug deals here would not evoke an emotional bias in comparison to the charged offenses and was not "*unduly* prejudicial" pursuant to Evidence Code section 352.  (*Cage*, at p. 275.)  And because the messages were relevant to whether the phone belonged to Webb and whether he possessed the drugs for sale, we conclude the evidence was not " 'merely cumulative' "and had "*substantial* probative value."  (*People v. Thompson* (1980) 27 Cal.3d 303, 318.)  The trial court did not abuse its discretion when it admitted the messages.

*Cumulative errors*

Webb contends that cumulative errors resulted in an unfair trial.  "[W]e have found no error to cumulate."  (*People v. Koontz* (2002) 27 Cal.4th 1041, 1094.)

11

DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

BALTODANO, J.

We concur:

GILBERT, P. J.

CODY, J.

12

Catherine J. Swysen, Judge

Superior Court County of San Luis Obispo

_____

Jeffrey Manning-Cartwright, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Kenneth C. Byrne and Deepti Vaadyala, Deputy Attorneys General, for Plaintiff and Respondent.